# City of Erie *versus* Caulkins.

1. Where an injury occurs to a passenger through an obstruction in the public street, placed there by the negligence of a contractor exercising an independent employment, a municipality is not responsible therefor unless by the terms of her contract the contractor is under her management.

2. A stipulation in her contract that her engineer shall have power to direct changes in the time and manner of conducting the work, is not such a reservation of power as will make her liable for the injury occasioned by the negligence of the contractor.

3. No additional liability is incurred by the municipality by reason of her taking a bond to indemnify her against any loss or damage resulting from a failure of the contractor to perform his duty.

4. Painter *v.* Mayor of Pittsburgh, 10 Wright 213 ; Reed *v.* City of Allegheny, 29 P. F. Smith 300, followed.

October 15th 1877.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Erie county :* Of October and November Term 1877, No. 40.

Case by Harriet J. Caulkins against the city of Erie to recover damages for injuries received from falling over an obstruction in the street and partially into a sewer then in process of construction.   In the fall of 1872, the city of Erie entered into a contract with Peter Grant to construct a sewer in State street in said city. While being constructed, the plaintiff in passing across said street fell over an obstruction into said sewer injuring her wrist and arm. It appeared that the night was dark at the time of the accident and there was no light hung near the excavation to give passengers warning.

Among the general specifications in the contract between the city and Grant were the following :—

" The contractor will be required to guard the public effectually from liability to fall into the trenches or from upsetting their vehicles against the earth thrown from them, during the whole progress of the work, both by night and by day ; and will be held responsible for any damages the city may have to pay in consequence of neglecting the necessary precautions.

" The contractor will be required to dismiss from his employment all incompetent or unfaithful persons ; also, to keep in perfect repair, for six months after its completion, the whole of his work, except

[City of Erie *v.* Caulkins.]

in cases where the repairs may be rendered necessary by causes clearly beyond his control.

"All the work to be commenced and carried on at such times and in such places and in such a manner as the engineer shall direct, he being aided by his assistants and inspectors. No work will be paid for unless accepted by the engineer or some other person appointed by the said street committee for the purpose. 'The contractor will not be allowed to open up more than one hundred feet of said State street at a time without the consent of the city engineer, and he is to keep clean the street after him so as not to interfere with travel any more than can be helped.'"

Grant was also required to and gave a bond to idemnify the city from any loss arising from failure on his part to perform his duty.

·At the trial before Vincent, P. J., the following points were submitted by the plaintiff, all of which the court affirmed.

1. That the defendant at all times is under legal obligations to the public to keep its streets and sidewalks in such condition and repair as will enable all persons and the public to pass along, upon and over them with safety; and if the jury believe, from the evidence, that the injury to the plaintiff was caused by the dangerous and unsafe condition of the street or crosswalk, at the southeast corner of State and Seventh streets, without any contributory negligence on her part, their verdict should be for the plaintiff.

2. That the city of Erie, defendant, having expressly reserved the right of public travel upon and along said State street, in its contract and specifications with Grant for construction of a sewer in State street, and having taken a bond of indemnity from said contractor to save and keep harmless the said city from all loss and damage on account of all such claims as presented in the case at bar, and having expressly reserved, by the terms of said contract and specifications, the right and power to direct and control the work; "the work to be commenced and carried on at such times and in such places and in such a manner as the engineer shall direct, he being aided by his assistants and inspectors," being the language of the contract, therefore the rule, as stated in the case of Painter *v.* The Mayor, &c., of Pittsburgh, 10 Wright 213, cannot apply in this case.

3. That if the jury believe from the evidence that the injury to the plaintiff was caused by the negligence of the city of Erie, through its officers, agents and employees, in not placing around the excavation (at or near the corner of Seventh and State streets, where the injury occurred), the necessary and proper barricades, lights, &c., without any contributory negligence on part of plaintiff, their verdict should be for the plaintiff.

The following points of defendant were all negatived by the court :—

1. The city of Erie is not liable for the acts or negligence of

[City of Erie *v.* Caulkins.]

another, unless the relation of master and servant or principal and agent exist between them.    If the injury sustained by plaintiff was caused by the negligence of a third person, not in the employ of the city, the plaintiff cannot recover in this case.

2.  If the excavation, into which the plaintiff fell, was made by a contractor for said work, in accordance with the Act of Assembly and ordinances of the city of Erie, and not by regular officers of said city, such contractor is not an agent of said city, for whose negligence or the negligence of whose workmen the city would be liable, and the plaintiff cannot recover.

3.  That the defendant, having by contract given to Peter Grant the construction of the sewer, is not responsible to the plaintiff for any injury she may have sustained through the negligence of the contractor or any of his agents or servants.

6.  The taking of the bond from the contractor, in connection with the contract, does not increase or change the liability of the city to plaintiff in this case.

In their general charge the court said :—

" We have no means, except negatively, of knowing the exact terms of the contract referred to in 10 Wright 213, but we may, we think, fairly infer that the city of Pittsburgh reserved no power to control the manner in which the work should be carried on, no right to use the street during the progress of the work, no power over the men employed by the contractor, and took no indemnity against any damages it might have to pay arising from the neglect or carelessness of the contractor in doing his work.

" In the case before us the city of Erie made all these reservations, and, having made them, we think we are bound to conclude that the defendant did not intend to relieve herself from her general responsibility to those who might be injured in consequence of the carrying on of this work, and that the reservation of the control the contract gave them over the workmen employed by the contractor made them its agents, and it their superior, even if the reservation of the right to continue the use of the street did not.

" We intend to defer fully to the authority of the Supreme Court, as is our duty by the rules of law, as well as due and proper courtesy from an inferior court to that of last resort.

" But it is also our duty to decide upon the applicability of the decisions to the case in hand ; and we are of the opinion that the cases cited by counsel for the defendant are based upon a state of facts so different from the case before us as to make them inapplicable, and we therefore charge you that the defendant is liable to the plaintiff for the injuries she has sustained if there be no other reason why she ought not to recover."

Verdict for plaintiff for $1275, and after judgment defendant took this writ, assigning for error the foregoing answers to points and the portion of the charge noted.

[City of Erie *v.* Caulkins.] ·

*Theodore A. Lamb* and *Davenport & Griffith,* for plaintiff in error.—An independent contractor is not the agent or servant of the person by whom he is employed. This contract does not contain any reservation of power such as will take this case out of this general rule and make the city liable for the contractor's negligence: Blake *v.* Ferris, 1 Selden 48; Reedie *v.* Northwestern Railroad Co., 4 Exch. 244; Kelly *v.* The Mayor of New York, 1 Kernan 436. The reservation that the work shall be carried on at such times and places and in such manner as the engineer shall direct, does not make the city liable: Blake *v.* Ferris, *supra;* Pack *v.* Mayor of New York, 4 Selden 222; Kelly *v.* The Mayor, *supra;* Reedie *v.* The Northwestern Railroad Co., *supra;* Painter *v.* Pittsburgh, 10 Wright 213; Reed *v.* Allegheny, 29 P. F. Smith 300; Wray *v.* Evans, 30 Id. 102.

We find no case where there is any reference to the taking of a bond for the due compliance with the conditions of the contract; yet it is well known, as a matter of fact, that it is always customary for corporations to require them; and, therefore, it is to be presumed that they were taken in all the cases referred to, even though not mentioned. But we consider it entirely immaterial; the bond is given to secure the due performance of the contract; but if the conditions of the contract favorable to the city do not inure to the benefit of the party injured, the taking of a bond will not assist them in a recovery.

*Allen & Rosenzweig* and *J. Ross Thompson,* for defendant in error.—We contend that the city was liable for the following reasons: 1. The sewer was at least quasi a public improvement. 2. The corporation retained the control of the street for public travel while the sewer was being built. 3. The corporation retained control of the contractor and his workmen as to the time, place and manner of performing the work, including the right to dismiss incompetent men. 4. The unsafe and dangerous condition of the street was the cause of the injury to the plaintiff, by the direct default of the city government in that behalf.

Mr. Justice GORDON delivered the opinion of the court, January 7th 1878.

The accident, which is the foundation of the present case, resulted from the negligence of certain workmen who were engaged in the erection or construction of a sewer for the city of Erie. The excavation for this sewer, which was in one of the public streets, having been carelessly left unguarded, the plaintiff, on the night of the 26th of November 1872, without any fault of her own, fell into it, and received the injuries complained of. The question now before us is, who is the responsible party? The defendant asked the court to say to the jury that, as the city had contracted with Peter Grant

to construct this sewer, it was not responsible to the plaintiff for any injury she might have sustained in consequence of the negligence of Grant, or his agents or servants.   The court refused so to charge, and this on the ground that, by the contract, the city reserved the power to use the street during the progress of the work, and to control the manner in which the work should be carried on; that it retained a power over the men employed by the contractor, and that, by the contract, it had provided for indemnity for any damages that might be recovered from it, arising from the neglect or carelessness of the contractor in doing the work.   The first part of this proposition is not found in the contract, except inferentially, from the stipulation therein contained for the protection of the public from the danger of falling into the trenches, and from the upsetting of vehicles on the earth thrown out of them.   It is, however, a matter of course that, in all cases of this kind, use shall be had of such parts of the streets as are not occupied by the contractor; but it is also of course, that the contractor shall have the control over such parts thereof as are necessary for the proper execution of his work. The complaint, however, is not as to such portions of the streets as were in public occupancy, but as to those which, it is conceded, were necessarily occupied by the contractor under his contract.   It must not be forgotten that the complaint is not that the street was used in an unlawful or unauthorized manner, but only that there was neglect in not erecting such guards, or in not maintaining such lights at night, as were necessary to protect the public from injury. Whether, therefore, the city did, or did not, retain the use of the street unoccupied by the work, is of no kind of significance.

The latter part of the court's proposition is faulty in that the converse thereof was ruled in Wray v. Evans, 30 P. F. Smith 102. In that case there was this provision in the contract: "That all losses, accidents and damages of whatever kind and from whatever cause, which shall at any time happen to the work, or any person or persons whomsoever, shall be wholly borne and made good by the party of the first part."   This provision was certainly as specific as that in the contract under consideration, but because the company in that case provided against consequences in which it could not be involved, nothing was thereby added to its liability.   Just so here, because the city supposed it might be liable for the negligence of its contractor, and so provided for indemnity, that surely did not make it so liable, if it were otherwise exempt from the consequences flowing from his want of care.   If, however, the broad statement that the city reserved the power, not only to control and direct the manner in which the work should be done, but, also, the power over the men employed by the contractor, be true, then, indeed, is the city responsible for the negligence of all who were engaged in the construction of the sewer.   In such case Grant must be considered but as an agent, over whose acts and conduct, in the prose-

cution of the work, the city would have unlimited control, and it must, in that event, be answerable for his negligence.   Is this then a correct version of the contract?   This question can only be answered by that instrument itself.   By the terms of this contract Peter Grant was to furnish all the material and do all the work necessary to build and complete an eighteen-inch sewer, in State street, from the centre of Fifth street to within twenty feet of the north line of Ninth street, according to the plan and specifications then on file in the office of the city engineer, which were made part of the contract.   The whole job was to be done in a workmanlike manner, and under the supervision and to the satisfaction of the city engineer.   In case of alterations made by the engineer in the specifications he was to decide what change, if any, should be made in the pay of the contractor.   An estimate was to be made, not oftener than once every two weeks, when payment was to be made, according to the price fixed per foot for the work, fifteen per cent. being retained until the final estimate and approval of the whole job.   So far, then, the whole charge of this work was put into the hands of Grant, and the city had no power over it except to see that it was well done, and, to this end, stipulation was made for supervision by the city engineer, just as was the case in Wray *v.* Evans and Reed *v.* Allegheny City, 29 P. F. Smith 300.

Do the specifications so modify and change the body of the contract as to alter the *status* of the parties, giving the city such general control over the work as to make it the *superior* who shall be answerable for Grant and his employees ?   Let us see.   By those specifications the contractor was required to dismiss, from *his employment*, all incompetent or unfaithful persons.   In this we may observe, that the statement, that the city had a general power over the men employed by the contractor, is too broad, for the contract is, that *he* shall dismiss, from *his employment*, incompetent or unfaithful employees.   Herein the fact of his superior and independent control over the workmen is recognised, for if the city retained this power, why contract with Grant for the doing of that which it could, at any time, do itself?   Finally, we have this provision : " All work to be commenced and carried on at such times, and in such places, and in such manner as the engineer shall direct."   The court below laid especial stress upon that clause, in the above specification, which gives the engineer the power of directing the *manner* in which the work should be done, and, in this, it is supposed to be borne out by an expression made by Judge STRONG, in Painter *v.* The Mayor of Pittsburgh, 10 Wright 213, as follows : " It is further ruled, that a clause in the contract, by which the contractor engaged to conform the work to such further directions as might be given by the street commissioner, did not affect the case ; that it only gave the corporation the power to direct the *results* of the

work, without any control over the *manner* of performing it, which control, alone, furnishes a ground for holding the master or principal for the act of a servant or agent." But the word *manner*, in the above quotation, is evidently considered as having a meaning so general as to reduce the contractor to the grade of a mere servant or agent. *Manner*, must, in such case, mean the power to control the work, not only as to its character, but also as to the particular means used to accomplish it. This must needs be so, for as we have seen in the case of Reed *v.* Allegheny, 29 P. F. Smith 300, a stipulation for general supervision of the work does not reduce the contractor to the grade of an agent, although necessarily, in such case, the engineer must, to some extent, control the manner in which the contract is performed. It is quite obvious that the word *manner* must be construed with reference to the contract in which it is found. By the agreement under consideration, the work was not only to be done in such manner, but at such times and in such places as the engineer shall direct; if this were the whole of the contract the matter would be of easy solution; but turning to the body of the contract, we find that Grant was bound to begin the work on or before the 25th of October, and to finish it by the 25th of December following, so that the engineer's directions as to time must be limited by the periods thus expressed. So as to place; that is fixed between certain points on State street, and whilst the engineer might direct that the work should be done on either side or in the middle of that street, as he might think would best subserve the public welfare, his directions that the work should be done on some other street, or even beyond the points indicated on State street, would be utterly nugatory. Just so with reference to the manner in which the work is to be performed; that is carefully prescribed in the specifications, and within these prescriptions the engineer may direct, but not beyond them. If he does require and direct something which is not found therein he must then act as arbiter between the contracting parties, and fix the rate of compensation for the work thus required, and that rate becomes part of the contract. This, in itself, exhibits two independent contracting parties who have provided themselves with an arbiter to settle their disputes. It is not thus with mere agents or servants, for they themselves are but parts of the means used by the master to accomplish his design, and that he may choose to alter the theory or plan of the work before it is begun or during its progress is of no moment to them. This contract contemplates the accomplishment of a certain result; the means, so far as they are deemed necessary to give the work its proper character, are carefully specified; the province of the engineer was to see that these means were properly applied, in other words, to see that proper materials and methods were used to produce the

[City of Erie *v.* Caulkins.]

required result. But in all this the contractor was supreme, for he had but to comply with his contract in delivering to the city a good job·according to the terms of that contract. In doing this he was his own master; the city could not direct where he should get his material, how he should bring it upon the ground or how many men he should employ. The city could not fill up the trenches which he dug in the ground designated for the sewer, neither could it erect barricades which he might not tear down if they obstructed his work; he was in the lawful possession of that part of the street which was necessary for the fulfilment of his undertaking, and the city could not dispossess him. We think, therefore, the principle of master and servant is not to be discovered in the contract between these parties, and that the defendant is not within the rule stated by Mr. Justice AGNEW, in Allen *v.* Willard, 7 P. F. Smith 374, that the liability of the employer of the contractor continues where he has not relinquished his control over the work to be done.

Again, it is scarcely open to question, but that Grant himself was responsible for the negligence of those whom he employed about this work. He could not plead that he was but an agent, and that as such he employed the workmen, for in this matter, at least, the city could not control him. These were his own servants who must look to him for their pay and direction; they had no claims against the city and could hold it responsible for nothing; even were they negligent and unskilful they could bid the city defiance until Grant chose to discharge them. If so, then, beyond controversy, Grant was, to these employees, the responsible superior and there could be no other. As was said, in Wray *v.* Evans, there cannot be two superiors severally liable for the acts of subordinate agents. This case, therefore, necessarily drops into that class of cases represented by Painter *v.* The Mayor, 10 Wright 213; Hunt *v.* The Pennsylvania Railroad Company, 1 P. F. Smith 475; Allen *v.* Willard, 7 Id. 374; and Reed *v.* The City, 29 Id. 300. In several of these cases this whole subject has been very carefully elaborated, and we need not, therefore, undertake to re-discuss the matter.

Judgment reversed. ·