## Miller *v.* Merritt, Appellant.

*Negligence—Fall of roof—Defective concrete—Question for jury.*

In an action against roofers by an employee of the owner of the building on which a roof was being placed, to recover damages for personal injuries, the case is for the jury and a verdict and judgment for plaintiff will be sustained, where the evidence tends to show that the accident was caused by the defendants using defective material, by improperly mixing the concrete, and by prematurely removing the supports of the roof before the concrete had hardened sufficiently to sustain the additional weight placed upon it by the defendants.

*Negligence—Independent contractor—Master and servant.*

Where the practical effect of a contract between the owner of a building and the contractors for roofing, is to authorize the latter to furnish the material and to do the work according to their own method without being subject to the control or direction of the owner, except as to the result to be obtained, the roofers are independent contractors, and this result is not changed by the fact that the agreement provides that the owner's superintendent shall have general supervision of the work for the purpose of ascertaining whether the contractors are carrying out their agreement.

128        MILLER *v.* MERRITT, Appellant.

Argued Jan. 24, 1905. Appeal, No. 154, Jan. T., 1904, by defendants, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1900, No. 553, on verdict for plaintiff in case of Ellen P. Miller v. Merritt & Co. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before SULZBERGER, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $8,000. Defendants appealed.

*Error assigned*, among others, was in refusing binding instructions.

*Thomas Earle White*, with him *Andrew C. Wylie*, *George Quintard Horwitz* and *White, White & Taulane*, for appellant.— The negligence, if any, of defendants' workmen was of those in a common employment with the decedent, Wilbur Miller, and the superior is not responsible therefor: Wischam v. Richards, 136 Pa. 109 ; Allen v. Willard, 57 Pa. 374 ; Congregation v. Smith, 163 Pa. 561 ; Reynolds v. Braithwaite, 25 W. N. C. 269 ; Erie v. Caulkins, 85 Pa. 247 ; Painter v. Pittsburg, 46 Pa. 213 ; Smith v. Simmons, 103 Pa. 36 ; Edmundson v. Pittsburg, etc., R. R. Co., 111 Pa. 316.

Even had there been evidence that the accident was caused by negligence of defendants' employees in the work to be performed by them, still the uncontradicted evidence showed they acted under the supervision and according to the instructions of Wilbur Miller : Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610 ; Johnson v. N. Y. C. & H. R. R. Co., 173 N. Y. 79 (65 N. E. Repr. 946).

*Thomas Leaming*, with him *William L. Chrisman*, for appellee. —No question as to the law of fellow servants is involved : Hunt v. Penna. R. R. Co., 51 Pa. 475 ; Allen v. Willard, 57 Pa. 374 ; Erie v. Caulkins, 85 Pa. 247.

OPINION BY MR. JUSTICE MESTREZAT, March 6, 1905 :
There was ample evidence submitted to the jury to justify

them in finding that the concrete used in the construction of the floors and roof of the building was defective by reason of improper or negligent mixing, and that the roof fell by reason of the defective concrete or premature removal of the "centres" which are temporary wooden structures used to support the plastic concrete work of the roof before it had become hard. The learned judge charged as to the concrete as follows: "I say there is evidence tending to show that the concrete was not properly mixed in the process, and that it was not properly made when it was done; that is, that the result showed that the process was wrong. You will remember the evidence of those witnesses who tended to show that. On the other hand, there is evidence on the other side to show that the process was excellent and that the result was excellent. There is a square issue of fact. One or the other, or perhaps in a degree both, may be incorrect; but it is for you to decide whether upon the whole there was any negligence on the part of the defendants, Merritt & Company, in mixing the concrete, so that from the defective nature of its mixing it produced the fall and the consequent injury to the decedent." It was also alleged by the plaintiff that the roof collapsed by reason of the defendants having prematurely removed the "centres" before the concrete had hardened sufficiently to support the additional weight and tamping of the material placed upon the roof by the defendants to make the drainage slopes. The trial judge properly submitted the question to the jury in the following language of his charge: "It appears that when they had got that base line done, they took this flooring off and they put this other stuff on and tamped it without a bottom to it. It is alleged here that that is not good work and that that really produced the mischief. That is a question of fact for you. It is averred on the one side and contradicted on the other. You will have to consider the weight of the evidence, and if you find that that did not produce the effect, of course the defendants cannot be charged in respect to it. If you, after examining all the reasons, cannot find what did produce the effect, then the defendants are not to be charged, because negligence must be affirmatively proved. But if you find that the tamping with the bottom off did produce the result, then the defendants are liable and must answer in damages."

Under these instructions, the verdict of the jury sustains the contention of the plaintiff that the death of Wilbur F. Miller, an employee of the owner of the building, resulting from the fall of the roof, was caused by the negligence of the defendants in using defective material in constructing the roof and in failing to properly support the roof until the concrete had hardened sufficiently to sustain the additional weight placed upon it by the defendants.

The learned counsel for the defendants, however, insist in their argument that there was no evidence to support the contention that the accident was caused by the improper mixing of the concrete or premature removal of the centres. The concrete used in this building was composed of certain proportions of cement, cinders and sand. Improper mixing results in "voids" which are open spaces in the body of the concrete and weaken the material. The more numerous the voids the weaker the concrete necessarily is. Essick, the city building inspector, examined the concrete immediately after the roof and wall fell. He testified that it had not been properly mixed, was full of voids, and that none of it had the proper set. It also appeared by the testimony that the concrete was not inspected by any person after it was made by the laborers; and as to the care with which they prepared it, one of the laborers testified that " the quicker they mixed it up the more time we would have to ourselves."

There was likewise sufficient testimony to go to the jury on the question of the negligent removal of the " centres." They were placed under the entire roof. The work of laying the concrete and tamping was begun Wednesday afternoon and finished Thursday morning. On the following day, Friday, according to the testimony of Branson, the defendants' employee, the " centres " were removed from the north end of the building where the roof fell on the following Monday afternoon causing the death of the plaintiff's husband. The roof at the south end of the building, from which the " centres " had not been removed, remained intact. The testimony of the defendants' own witnesses shows that the " centres " should not have been removed in less than three or four days after the cement had been laid, while the testimony of the plaintiff's witness leads to the belief that a longer time should have elapsed, one

witness, the building inspector, saying : "I would not remove them under two weeks, not a day less than two weeks."

Under this and other testimony in the case, it was clearly a question for the jury to determine whether the defective concrete and premature withdrawal of the " centres " caused the roof to fall, which resulted in the death of the plaintiff's husband.   If the testimony alluded to is credible, the " centres" should have remained in position for at least three days to support the weight of the floor.   The tamping and additional weight of the heavy material placed on the roof for constructing the drainage grade required that the " centres " should continue in place much longer.   There is also the significant fact, in support of the verdict, that only that part of the roof fell from which the " centres " had been removed.   It is true that one of the plaintiff's witnesses testified on cross-examination that the absence of tie-rods between the I beams permitted the arches to flatten and push the wall out and that caused the accident.   This, like the other testimony introduced to establish the cause of the accident, was submitted to the jury who were distinctly told by the court in affirming a point that " if you find that the accident resulted from the absence of tie-rods, . . . . your verdict must be for the defendants."   They were also instructed that " if you, after examining all the reasons, cannot find what did produce the effect, then the defendants are not to be charged, because negligence must be affirmatively proved."   The jury, therefore, found that the accident was not caused by the absence of tie-rods, but by the improperly prepared concrete and premature removal of the " centres " from the part of the floor which fell.

It is further contended by the defendants that Miller was guilty of contributory negligence, that he knew the conditions at the place of the accident and assumed the risks ; and further, that defendants' employees acted under his supervision and according to his instructions in performing the work.   The learned court, however, left these questions, with proper instructions, to be determined by the jury.   He told the jury there could be no recovery if Miller participated in or supervised the preparation of the concrete, or the " centres " were removed at the request or by direction of Miller, or he had knowledge of their removal, and that " if Wilbur Miller really acted so that these

people (defendants' employees) obeyed him, and that he directed this thing, or knew of it, then they (defendants) cannot be held liable."

It is also contended by the defendants that they were the agents of the Bell Telephone Company to obtain the workmen and furnish the material for the work to be done, and that Miller was the agent of the telephone company to direct the workmen in the use of the material, and hence, he and the employees of the defendants were fellow servants of a common master, the telephone company. It is, therefore, claimed by the defendants that the relation of independent contractor did not exist between them and the Bell Telephone Company which employed them to construct the floors and roof of the building. As we have seen, the jury found that Miller did not supervise the mixing of the concrete or direct the defendants' workmen in laying it or in removing the " centres." Those were questions for the jury: Pender v. Raggs, 178 Pa. 337. It is contended, however, that under the contract with the defendants this authority was vested in the telephone company and its employee, Miller, and that, therefore, the defendants were not independent contractors. If the telephone company stood in relation to the defendants of master and servant or principal and agent, then the defendants are not liable for the injuries to Miller caused by the negligence of their workmen. If, on the other hand, the defendants were independent contractors, they are responsible for the negligence of their employees resulting in Miller's death. The relation of the parties to each other must be determined from the contract which created it. The contract provides that, for the consideration of $2,549, the defendants shall furnish all the material and labor for, and erect, the floors and roof of the building in accordance with the revised plans and specifications within two weeks after notice to proceed with the work. If the defendants neglected to do the work or furnish the materials in accordance with the agreement, the telephone company was authorized to do so at their expense, or to declare the contract forfeited and to reaward it, the defendants being liable for any damage caused by their default. The contract further provides that the telephone company should have the right to change any part of the plans of the building

during the progress of the work and that the defendants should comply with the direction of the company's superintendent of construction as to the time and manner of performing the work, the precaution to be taken and the quality of the materials and workmanship. It is claimed that these provisions of the contract reserved to the telephone company, the owner, the complete control of the work to be done, as well as the method and details of performing it, and consequently established the relation of master and servant between the telephone company and the defendants. We think, however, this conclusion is erroneous when the purpose and the language of the whole contract are considered. What the owner, the telephone company, desired and intended to secure by the contract was the construction of the floors and roof of the building in accordance with the defendants' system of steel and concrete construction. The contract and specifications were prepared with that end in view. The owner's purpose, as clearly disclosed by the agreement, was to secure this result, leaving to the defendants the means of accomplishing it. They were to furnish the material and the labor at their own expense and were not restricted as to where, or to the person from whom it should be obtained. The character of the material and the details of the work were provided for in the specifications which were a part of the contract. The completion of the work according to the specifications and the contract was a full compliance with the agreement. The defendants selected, employed and paid the workmen out of their own funds, and the telephone company could not dismiss them. The compensation was a round sum for the entire work, with a stipulation that on failure of the defendants to complete it within the period specified in the contract, they should be subject to a penalty and the owner might complete the work at their expense, or might reaward the contract and hold the defendants for damages. These provisions clearly show that the defendants were to procure the material and to do the work with their own employees within the specified time and in accordance with the detailed description set forth in the specifications. It is claimed, however, by the defendants that they were denied the control of the work and the mode of performing it by the provision of the contract that they should comply

with the direction of the owner's superintendent of construction as to the time and manner of performing the work, the quality of the material and the workmanship. But this is a misapprehension of the effect of this clause of the agreement. The contract provides that the work shall be completed in two weeks, and the specifications require the materials to be the best of their respective kinds and the entire work " to be constructed and finished in every part in a good, substantial and workmanlike manner, according to the accompanying drawings and this specification." It is apparent, therefore, that the clause of the agreement just referred to conferred on the owner's superintendent of construction only such supervisory powers as would enable him to see that the defendants were performing the work in compliance with the provisions of the contract and specifications, and gave him no authority to direct the workmen as to the methods of executing the details of the work. If he discovered on inspection that the defendants' employees were neglecting or not properly constructing the work, it was not his duty to instruct them how to do it or to require them to do it in a proper manner, but to notify their employers, the defendants, of their conduct, and upon failure of the defendants to have the work satisfactorily performed, the owner was authorized by the agreement, at the cost and expense of the defendants, to " employ on the work such mechanics, overseers and laborers, . . . . and purchase such materials as may . . . . be necessary to make up or correct the shortcomings, omissions or delinquency " of the defendants who were liable to the owner for damages caused by their default. This view of this clause of the contract in question is supported by the language of the agreement immediately preceding the clause, which declares that the defendants shall provide safe and proper facilities for the inspection of the work by the owner's superintendent of construction.

The practical effect of the whole agreement, we think, is to authorize the defendants to furnish the materials and to do the work in constructing the floors and roof of the building according to their own method without being subject to the control or direction of the owner except as to the result to be obtained. In the performance of the work, therefore, the defendants were independent contractors and not servants of the owner : Hunt

v. Penna. R. R. Co., 51 Pa. 475; Allen v. Willard, 57 Pa. 374; City of Erie v. Caulkins, 85 Pa. 247. Provisions in a building contract permitting the owner during the progress of the work to make alterations, deviations, additions or omissions from the agreement, the cost of which is to be added or deducted from the contract price, do not make the contractors servants of the owner: Frassi v. McDonald, 122 Cal. 400. Reserving the right of supervision for the purpose of ascertaining whether the contractor carries. out his agreement, or reserving the right to dismiss incompetent workmen, will not render the employer liable for the negligence of the contractor's workmen: Atlanta, etc., R. R. Co. v. Kimberly, 27 Am. St. Rep. 231; Bibb v. N. & W. Railroad Co., 87 Va. 711. An employee is a contractor and not a servant of the employer, although the work is to be performed under the inspection and to the satisfaction of an architect acting as the agent of the employer: Smith v. Milwaukee, etc., Exchange (Wis.), 51 Am. St. Rep. 912.

The argument of the learned counsel for the defendants is devoted to a discussion of the refusal of the learned trial judge to affirm their point that under all the evidence the verdict should be for the defendants. It would have been error to affirm this point, as the case was clearly for the jury. It was submitted in a charge, full and explicit, and to which no exception was taken.

The judgment is affirmed.