## JOHNSON *v.* THE STATE.

1. The accusation was not open to demurrer on the ground of duplicity.
2. If a witness, after refreshing his memory by an examination of his books as to a transaction made by himself, finally testifies from his recollection thus refreshed, such testimony is admissible.
(*a*) Books are the best evidence as to what they show.
(*b*) Refusal to rule out as a whole specified evidence, partly competent and partly incompetent, the inadmissible portion not being specified, does not furnish a legal ground of complaint.
3. In order to sustain a conviction under the "labor-contract" act of 1903, it must appear that the accused contracted to perform the labor or service himself, not merely to furnish and pay for the labor, and that he has, without good or sufficient cause, failed and refused to carry out his contract.
4. The verdict was without evidence to support it, and the refusal of a new trial was error.

Submitted March 19,—Decided May 10, 1906.

Accusation of cheating and swindling. Before Judge Hyman. City court of Sandersville. February 1, 1906.

Richard Johnson was tried on an accusation charging him, under the provisions of the act approved August 15, 1903 (Acts 1903, p. 90), with the offense of cheating and swindling. The allegations of the accusation, so far as material here, were, that the accused, on December 16, 1905, contracted "with B. E. Roughton to perform for him service as a farm laborer as cropper for the said B. E. Roughton for the year 1906, with intent then and there to procure money or other things of value thereby, to wit, fifty-six dollars in money, of the value of fifty-six dollars, and with intent then and there not to perform said service so contracted to be done, to the loss and damage of the said B. E. Roughton in the sum of fifty-six dollars, and, after having so contracted, did procure from the said B. E. Roughton the sum of fifty-six dollars in cash, with intent not to perform said service, to the loss and damage of the hirer in the sum of fifty-six dollars, of the value of fifty-six dollars, contrary to the laws of said State," etc. The defendant demurred to the accusation, on one ground, viz., "that said accusation was bad for duplicity, in that it charged and set forth two separate and distinct offenses in one and the same count." The demurrer was overruled. The trial proceeded, and B. E. Roughton, the prosecutor and the sole witness for the State, testified: "On December 16, 1905, Richard Johnson made a contract with me to run a one-horse farm during this year [1906]. I was to furnish the land and the mule and half the guano. I was also to feed the mule. The crop was to be equally divided between us. The contract was made in Washington county, Georgia. *On the day the contract was made, I paid the defendant fifty-six dollars in money. I paid John Paine for him $27.60. I paid his boy $13.40, and I gave the defendant himself $10.00 for Christmas money.* I paid this money on the faith of the contract at defendant's request, on the day the contract was made. The defendant has failed to carry out the contract, and moved off my place since the contract was made, and he has not paid back the money. I am damaged in these amounts, because I am out of my money." On cross-examination, the witness swore: "*I did testify, at the commitment trial of the defendant, that the contract was made on the 18th day of December and that I paid him something over $61.00 on the contract, but I have since gone to my books and they show that the contract was made on the 16th day of December and that the amount I paid him was $56.00. I*

*was not certain what amount I paid to John Paine, until I looked at my books, but since looking at them and refreshing my memory I know it was $27.60. My books are not here in court; they are across the street in Mr. Grier's store.* I did not pay John Paine any money, because he owed me, and I just credited the $27.60 to his account, which was satisfactory to him. Yes, the defendant claimed that the $13.40 I paid his boy was for the boy's half interest in a bale of cotton which the boy and John Paine owned together; and John Paine might have said so, too; I don't remember. I got the bale of cotton, but I gave John Paine credit for it. All the money I paid this defendant on the contract was the $27.60 to John Paine, the $13.40 to defendant's son, and the $10.00 I paid to defendant in person. I admit that the defendant paid back the $10.00 before this prosecution, that he left that amount for me with my foreman. I had no contract with defendant last year; he was working on shares with John Paine on my plantation." Defendant moved to rule out so much of the foregoing testimony of the prosecutor as is italicized, on the ground that it was secondary and hearsay, that the books were the best evidence, and that the witness could not refresh his memory from the books without producing them in court. This motion was overruled. There was a verdict of guilty. Defendant moved for a new trial, which motion was overruled, and he excepted, assigning error upon the overruling of the demurrer, and upon the refusal of a new trial.

*A. R. Wright,* for plaintiff in error.

*G. H. Howard, solicitor,* and *Evans & Evans,* contra.

FISH, C. J. (After stating the foregoing facts.)

1. It is contended, for the plaintiff in error, that the accusation was bad for duplicity, as it alleged in the same count, " (a) that the accused made a contract with the intent to defraud, and did by that act defraud the prosecutor; and (b) that after having made and entered into a contract with the prosecutor, he committed fraudulent acts by which the prosecutor was damaged." We do not think the accusation open to a demurrer on the ground of duplicity. The substance of the charge was, that the accused, with intent to defraud the prosecutor, entered into a contract with him, and after so doing committed the fraudulent acts by which the prosecutor was damaged. Whether the accusation was otherwise demurrable is not before us for decision.

2. The prosecutor testified, that he paid the accused a designated sum of money; that three specified items made up this sum; that on a former trial he testified to a different sum; that the reason for the change in his testimony was, that on the former trial he had forgotten the exact amount of one of the items, but he had subsequently refreshed his memory as to that item by referring to his books. It appears that the witness had personal knowledge of the transactions, entries of which were made on his books, as he testified that he paid the several amounts himself. He refreshed his memory as to only one item by referring to his books; he remembered the other two items. He testified: "I was not certain what amount I paid John Paine, until I looked at my books; but since looking at them and refreshing my memory, I know it was $27.60." He was not simply undertaking to swear to the correctness of information he had derived solely by consulting his books, but he ultimately testified from his recollection, as refreshed by an examination of his books, to the exact amount he paid John Paine and about which he had previously been in doubt. This he could do. *Shrouder* v. *State,* 121 *Ga.* 615(2).

A portion of the testimony of the prosecutor sought to be excluded was as follows: "I have since gone to my books, and they show that the contract was made on the 16th day of December, and that the amount I paid him was $56." This was clearly inadmissible, as the books themselves were the best evidence as to what appeared thereon. There was, however, no separate motion to exclude this portion of the prosecutor's testimony. The motion was to exclude as a whole that portion of the prosecutor's testimony which we have italicized in the statement of facts, which includes the testimony we have ruled was admissible, as well as that which was inadmissible. The overruling of the motion, therefore, furnished no ground of complaint. "Where a motion to rule out evidence is too broad, comprehending both admissible and inadmissible evidence given by the witness named, and not distinguishing the one from the other, the motion should be denied." *Birmingham Lumber Co.* v. *Brinson,* 94 *Ga.* 517; *Barnard* v. *State,* 119 *Ga.* 436, and cit.

3, 4. The evidence was not sufficient to authorize the conviction of the accused. "Before one can be lawfully convicted of a violation of this statute [act approved August 15, 1903, Acts 1903, p. 90], several things, essential to constitute the offense defined, must

be shown. Among them is, that there was a distinct and definite contract for service; and another is, that the person contracting to perform this service has, without good and sufficient cause, failed and refused to carry out his contract by performing the service." *Glenn* v. *State,* 123 *Ga.* 585, 587. There was no evidence that the accused, under the alleged contract, was to perform any service or labor himself. As to the contract the prosecutor testified: "I was to furnish nothing but the land and the mule and half of the guano, and the mule was to be fed in my lot. . . The defendant was to furnish half of the guano and the labor, and pay for it, and he was to furnish his own supplies." The accused was to *furnish* the labor and *pay* for it. This did not mean that he was to do the labor or perform the service himself. Under the evidence, he was not a servant or laborer, but a contractor, and did not come within the scope of the .act under which the accusation was framed. *Vinson* v. *State,* 124 *Ga.* 19, and cit. Moreover, even if there had been any evidence that the accused was to perform the service or labor, there was no evidence that he refused to carry out his contract without good and sufficient cause. The court, therefore, erred in not granting a new trial on the ground that there was no evidence to authorize the verdict.

*Judgment reversed. All the Justices concur.*