## Brooks *v.* Buckley & Banks.

*Workmen's compensation—Employer and employee—Independent contractor—Cleaning off snow from streets—Municipalities—Cost-plus contract.*

1. A municipality is bound to keep its streets passable and, if necessary, to clear them from snow.

2. It may employ workmen directly to clear the snow, and when it does so it acts as an employer and comes within the terms of the Workmen's Compensation Act.

3. It may also contract with an independent contractor to do the work and, if it does so, the contractor, and not the city, is liable for injuries to workmen employed by the contractor.

4. It may employ men for a part of the work, and let out the remainder of the work to a contractor, in which case it is liable to its own employees for injuries, and the contractor, not the city, is liable to those employed by him.

5. The fact that the city controlled the manner in which the work should be done by the contractor, does not make it liable for injuries to the contractor's workmen, if it left to the contractor the power to hire, discharge and pay the men.

6. The relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract.

7. Where a city enters into a cost-plus contract with a contractor to clean the streets of snow, the quality of the relation between the contractor and the men hired by him is not changed by the authority reserved in the city to direct and control the work, to appoint inspectors and to check up the pay rolls by time

keepers, and such other safeguards, if it appears that the contractor hires, discharges and pays the men, determines their hours of work, appoints their foreman and retains ultimate control of their manner of doing each particular step in the work.

Argued May 11, 1927.    Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 220 and 221, Jan. T., 1927, by Harvey Brooks and Buckley & Banks, from judgments of C. P. No. 2, Phila. Co., Sept. T., 1926, Nos. 5796 and 5797, affirming decision of workmen's compensation board, in cases of Harvey Brooks v. Buckley & Banks, and Harvey Brooks v. Philadelphia.   Affirmed.

Appeals from decision of workmen's compensation board sustaining award of workmen's compensation board against Buckley & Banks and disallowing claim against City of Philadelphia.   Before LEWIS, J.

The opinion of the Supreme Court states the facts.

Decisions affirmed.   Plaintiff and Buckley & Banks appealed.

*Errors assigned,* inter alia, were judgments in each case, quoting record.

*H. Rook Goshorn,* with him *Frank R. Ambler* and *Harry S. Ambler, Jr.,* for appellant, Buckley & Banks. —Plaintiff was an employee of the City of Philadelphia and not of defendants: Lecker v. Valentine, 286 Pa. 418; Tarr v. Coal & Coke Co., 265 Pa. 519; Kelley v. R. R., 270 Pa. 426; Atherholt v. Stoddart Co., 286 Pa. 278; Puhlman v. Cab Co., 259 Pa. 393.

Defendants are relieved under section 302 (b) of Workmen's Compensation Act: Qualp v. Stewart Co., 266 Pa. 502.

*Todd Daniel,* with him *Henry Temin,* for appellant, Harvey Brooks.

1927.]          Arguments—Opinion of the Court.

*Todd Daniel* and *Henry Temin,* for appellee, Harvey Brooks, were not heard.

*Paul de Moll,* Assistant City Solicitor, and *Joseph P. Gaffney,* City Solicitor, for appellee, City of Philadelphia, were not heard.

OPINION BY MR. JUSTICE KEPHART, June 25, 1927:

Buckley & Banks had a contract with the City of Philadelphia to furnish men and trucks for the purpose of removing snow and ice from the streets between curbs. Brooks, one of their employees, was injured while at work. His employers were ordered to pay compensation, and they appeal. The question we must decide is whether appellants, Buckley & Banks, or the City of Philadelphia, is responsible for the payment of compensation.

Appellants' position is that, because the city is a municipal corporation, it was under a duty to keep its highway free and clear for public travel. It performed the work by its own employees, and also by men secured from appellants and others. All were directed and controlled by the city. It was, therefore, according to appellants, an employer or a contractor within the meaning of the Workmen's Compensation Act. Where one is bound to perform the particular piece of work in which the employee was engaged, he may be regarded as a master: Labatt's Master and Servant, 2d ed., vol. 1, section 24; the act defines "employer" as synonymous with "master," hence Brooks was an employee of the city.

The City of Philadelphia is undoubtedly impressed with the obligation of keeping its streets in a travelable condition; it is a municipal function, and if this duty is disregarded to the injury of a member of the traveling public, the city will be responsible in damages for such neglect: Allentown v. Kramer, 73 Pa. 406; Scibilia v. Phila., 279 Pa. 549, 555. Failure to keep the streets passable "represents a breach of an imperative duty ex-

pressly imposed by the State on a municipality": Scibilia v. Phila., supra.

This liability concerns the physical condition of the streets as such; its controlling principle does not apply to the negligent acts of city employees in doing the work whereby a fellow employee, or a third party, is injured. For illustration, where an automobile truck (city property), operated by an employee of a city department in the performance of government work, negligently runs down and injures a pedestrian, the city is not liable for the act of its servant: Scibilia v. Phila., supra. Whether an employee of the city could at common law hold the city liable for damages because of a negligent act of an employee in doing work, or because the place or the tools provided were unsafe, is a matter which we need not here determine. If the city could not have been so held, then again we have illustrated the wide scope of the Workmen's Compensation Act, since it specifically applies to such municipal corporations and their employees.

In the performance of its duty to make the streets passable, the city is not restricted to any particular means. In the case before us there was an emergency resulting from a heavy fall of snow and an accumulation, of ice, making travel dangerous, if not impossible at places. The situation presented an immediate duty. While the city, as a government, is ordinarily compelled to clear the streets for travel, and in certain emergencies is possessed of extraordinary powers, neither the power nor the duty creates relations which do not arise except through contract. The municipal corporation still possesses, as to the thing to be operated on, certain rights of property about which contracts may center. The city has a qualified ownership of its streets. As a government, its duty to the public is to clear or clean them. As an owner, it may contract with persons directly to clear the streets, or with an individual or corpo-

ration to furnish labor and equipment. Therefore, we cannot fix liability on the city because of its duty to the public, but must inquire further whether, as an owner of property dealing in relation thereto, it became liable.

As an owner, the city employed directly certain of its own workmen to perform the service. In so doing, it acted as an "employer" under section 103, which includes "municipal corporations." An owner of property who employs a number of people to work on his premises may, as to such persons, be an employer, subject to the obligations of the Workmen's Compensation Act. It does not necessarily follow, where the owner is thus an employer as to certain work on his premises, he continues to be so as to other work done thereon.

He may assume a dual attitude in hiring men to do parts of a given piece of work and letting other parts of the work to independent contractors, all parts of the given undertaking to be performed on the same premises. As to the former, the owner is an employer required to pay compensation under the act; as to the latter, an owner and not an employer or principal contractor as understood by the act, or in any view liable for compensation.

Thus an owner, in erecting a building, may employ by day wages the labor to dig the foundation and masons to put up the walls. He may let, to independent contractors, the plumbing, electrical, painting, plastering, and all other construction work necessary to complete the building. As to the men directly employed, he is an employer; as to contractors and their servants, he is in no sense a principal contractor, contractor or employer under the act.

Therefore, when the city engaged Buckley & Banks to furnish labor and equipment necessary to remove the snow and ice from its premises (the streets of Philadelphia) and at the same time had its own employees engaged in the same occupation, it was an "employer" to its own employees, and an owner as to Buckley & Banks.

A city ordinance authorized the expenditure of $20,000 for the removal of snow and ice, and provided some of the means by which the work might be done. It did not deprive the city of the power to contract, nor did the ordinance of itself create the relation of master and servant as to appellant's men.

This answers appellant's contention that, under section 203 and 302 (b), the City of Philadelphia was the principal contractor because obliged to perform the particular piece of work. If an owner of property, merely because he lets a contract for work to be done on his property, becomes a contractor under the Compensation Act, then all owners would be contractors compelled to take out compensation insurance for all employees that might work on their premises. The act does not contemplate any such thing; it includes only those standing as to each other in the relation of master and servant at common law.

It is further contended that the city controlled the manner and method of doing the work, and, having the power to direct and control the acts of the employee, it must at least be regarded, under the principle in Tarr v. Hecla C. & C. Co., 265 Pa. 519, as an employer to whom a servant was loaned. Undoubtedly, direction and control are part of the powers governing all employments. But they are not all the indicia of that relation, nor do they, as these terms are understood, appertain solely to the master. There may be control and direction over certain of the phases or allotments of the endeavor, yet through all the work may be seen a continuous line, plainly marked, denoting master and servant. The relation of master and servant is determined where there is a joint control and direction, working in different spheres, by its primary elements. Who exercises the power to hire, discharge and pay the men?

We in our cases have broadly used the terms "control over result," "control over the manner and method of doing the work," "with power and authority to direct

and control the acts of the alleged employee," as predicating at all times the relation of master and servant. These statements must be considered in connection with the facts then before us. As applied, they largely aid in fixing the status of an employee as illustrated by Tarr v. Hecla, supra; Lecker v. Valentine, 286 Pa. 418; Eckert v. Merchants Shipbuilding Corp., 280 Pa. 340; Kelley v. Delaware, Lackawanna & Western R. R. Co., 270 Pa. 426; Atherholt v. William Stoddart Co., 286 Pa. 278; Puhlman v. Excelsior Express and Standard Cab Co., 259 Pa. 393. In all of these cases, the controversy was between different employers, or it was urged the injured person was an independent contractor.

The application of the principles should not be carried beyond the purpose intended, namely, in cases where the employer, under ordinary rules, did not stand out clearly, the rules are resorted to as an aid to determine the question. No rule should be extended or applied so as to expressly forbid direction and control in the one who owns or contracts, or which, from the very nature of the work itself, must be reserved to the owner or contractor.

There are stipulations in contracts which entitle an owner to exercise a certain measure of control and direction with certain attendant authority; these do not affect the quality of the contract, or the relation of the workmen engaged. Thus in Miller v. Merritt, 211 Pa. 127, where the agreement provided that the contractor should comply with "the directions" of the employer's superintendent as to the time and manner of performing the work, the precautions to be taken and the quality of the materials and workmanship, and further provided that if the contractor neglected to do the work and furnish the material, the employer should be at liberty to provide such labor, etc., the owner was held not to be an employer or contractor. The same conclusion was reached in City of Erie v. Caulkins, 85 Pa. 247, where the contract provided that "all work to be commenced

and carried on at such times and in such places, and in such manner as the engineer shall direct," and further provided that the person employed should conform to such further directions as might be given by the street commissioner. See also Allen v. Willard, 57 Pa. 374; Wray v. Evans, 80 Pa. 102, and Thomas v. Altoona & L. Valley Electric R. Co., 191 Pa. 361.

In Simonton v. Morton, 275 Pa. 562, the court below awarded compensation on the ground that Simonton was a servant or employee of the defendant. Morton, had agreed with Simonton, the claimant, that the latter was to put up, paint, and repair advertising billboards for him; the defendant was to furnish claimant with paint, lumber, pails, and other necessary materials to build and paint the signs. He also reserved the right to direct where the work was to be done, to control any change of design that was to be painted, and to relocate any sign boards that were to be moved; and the claimant was to furnish and pay for the necessary repairs as well as traveling expenses and be subject to the control of the defendant as to the design and color of the advertisements. Defendant had the right to exercise direction and control over the work. In reversing the judgment, we said (page 569) speaking through Mr. Justice SCHAFFER, "It is apparent however that these provisions are for the purpose of guaranteeing ultimate performance in accordance with the agreement...... There necessarily must be a certain control by the contractee of all undertakings such as the one we are considering, otherwise he could not safeguard himself as to the satisfactory accomplishment of the work. 'As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control......The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not *inferable from the reservation of powers which do not deprive the contractor of his right to do the work ac-*

*cording to own initiative so long as he does it in accordance with the contract!"* See also Smith v. State Workmen's Insurance Fund, 262 Pa. 286.

This brings us to the facts of our case. There is known to the contracting world, a great body of agreements called "cost-plus" or "time and equipment," or "time and material" contracts; therein labor, labor and equipment, or labor, equipment and material is contracted for by the owner for certain work. During the war, the United States Government did the great part of its work by means of "cost-plus" contracts,—that is, the actual cost of labor, or labor and material, plus ten per cent, fifteen per cent, or whatever might be agreed on. The mode of contracting was necessary because of shifting prices, uncertain nature of work to be done or encountered, and other causes. Many corporations and individuals are constantly required to make such contracts. It is because the character of the work to be undertaken is not subject to a contract on a unit basis on any fair terms. As an illustration, see Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., 276 Pa. 409, which involved a contract to tear down a part of a building and erect an addition. The work to be done was of such nature that no contractor could safely bid a lump sum on it unless an exorbitant price was charged. It was agreed the work should be done on a "time and material" basis. The contractor furnished the labor, equipment and materials. The owner, Somers, Fitler & Todd Co., was not a master or employer, as defined in the Compensation Act, with respect to that work, though as owners they were bound to retain a certain control and direction, not only of the work to be done and the results to be obtained, but in certain phases how the work should be done. The contractor was in complete control of the actual work.

The place where the work is to be performed, its kind, class or character, and the result to be accomplished, are subject to the control and direction of the owner;

the contractor employer controls the actual operation or the way his own men do the work.

The question has been frequently considered in other jurisdictions. A person furnishing labor or service of others under contract to do the whole business of a corporation, or a particular branch of it, is a contractor, and not an employee: Lehigh Coal, etc., v. New Jersey Cent. R. Co., 29 N. J. Eq. 252, 255. Persons who supplied laborers and teams for the construction and repair of a railroad, being paid for the same by the day, either party having the right to stop work at the end of any day, were held to be contractors and not employees: Tod v. Kentucky Union R. Co., 52 Fed. 241, 247, 3 C. C. A. 60, 18 L. R. A. 305. "The term 'laborer' cannot be construed as designating one who contracts for and furnishes the labor and service of others, or one who contracts for and furnishes one or more teams for work, whether with or without his own services or the services of others to take charge of the teams while engaged in the service": Balch v. New York, etc., R. Co., 46 N. Y. 521, 524. Persons who supplied laborers and teams for the construction and repair of a railroad, being paid for the same by the day, either party having the right to stop work at the end of any day, were held to be independent contractors and not servants of defendant: Tod v. Kentucky Union R. Co., supra. One who agrees to furnish or pay for labor for the benefit of another is a "contractor" and not a "laborer" within the terms of the Labor Contract Act (Acts 1903, p. 90): Holloway v. State, 125 Ga. 243, 247, 54 S. E. 184; Coleman v. State, 6 Ga. App. 398, 65 S. E. 46. "One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely according to his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to [the orders of] the latter with respect to the details of the work, is clearly a contractor, and not a servant": Shearman & R. Neg. section 77.

The line of distinction as to control and direction in "cost-plus," "time and material," or "time, material and equipment" contracts, is that, in such contracts, the quality of the relation between the contractor who hires and the employee hired is not changed by the authority to direct and control reserved by the owner. The contractor hires, discharges, and pays the men, determines or controls their hours of work, the foreman they work under, and retains ultimate control of the workman's manner of doing each particular step in the work. In the case before us, these powers remained at all times with the contractor who furnished the men, though control of the place (streets to be worked on), the kind, class, or character of the work, the result to be obtained, (the removal of snow) and the method of doing the work (by shovel and truck), was reserved to the city. The real employment here was that of the contractor who, by agreement, furnished the city, on a "cost-plus" basis, men and equipment to do the work.

The fact that the city employed an inspector whose duty it was to see the city was not cheated through doing the work, a timekeeper, to keep down padded pay rolls, and such other safeguards, does not alter the situation or change the relation to employer and employee.

In all contracts or engagements to furnish men, material and labor on "time and material" or "cost-plus" basis, the owner with whom the contract is made is not within the Compensation Act, an employer or contractor to the employees engaged, though he does exercise control and direction over the work being done. Nor in such cases is the servant loaned to the owners.

Judgment affirmed.