Thomas V. **BILLANTE**, Plaintiff,

v.

D. D. **DAVIS CONSTRUCTION COMPANY, INC.**, Original Defendant and Third-Party Plaintiff,

v.

**KEYSTONE LUMBER COMPANY** et al., Third-Party Defendants.

Civ. A. No. 71–424.

United States District Court,
W. D. Pennsylvania.
April 30, 1974.

Louis M. Tarasi, Jr., Pittsburgh, Pa., for plaintiff.

Anthony J. Polito, Pittsburgh, Pa., John J. Repcheck, Robert E. Wayman, Pittsburgh, Pa., John E. Kunz, Pittsburgh, Pa., for defendant.

## OPINION and ORDER

McCUNE, District Judge.

We have before us cross motions for summary judgment made by the plaintiff and original defendant which raise the issue whether the original defendant, D. D. Davis ("Davis"), is entitled to invoke the Pennsylvania Workmen's Compensation Act statutory employer defense in this negligence action brought by the plaintiff.

The defendant's motion, if granted, would result in a dismissal of the complaint against it. The plaintiff's motion, if granted, would preclude Davis from relying on the statutory employer defense and the case would proceed to trial on the issue of Davis' alleged negligence.

The plaintiff, Billante, was injured when a scaffolding plank on which he was standing broke and he fell 10 feet to the ground. The accident occurred in downtown Pittsburgh during the construction of a building owned by the United Methodist Church Union.

The United Methodist Church Union had let the general construction contract to D. D. Davis Company. During the course of the construction Davis encountered difficulty in hanging or installing stainless steel covers (or skins) on columns that were a part of the exterior of the building. Davis then entered into a contract with Mainstream Corporation under which Mainstream was to complete the installation of the skins. According to the terms of the contract, Davis was obligated to supply all tools, materials and equipment and Mainstream was to supply the labor and supervision for this work. Billante contends this was a cost-plus contract. Davis disagrees and argues it was merely a contract to supply labor and supervision at an established hourly rate.[1] Billante had been employed by Davis and was one of the employees hanging the skins. When Davis made the contract with Mainstream, it was agreed that Billante would be laid off by Davis and immediately hired by Mainstream to do the same work. While working for Mainstream hanging the skins the scaffolding plank broke and Billante was injured.

Billante contends that Davis was negligent in supplying a plank which was defective. In defense, Davis counters that it was Billante's statutory employer under § 203 of the Workmen's Compensation Act, 77 P.S. § 52, and, therefore, cannot be sued for its negligence in a common law action.[2]

Section 203 provides:

> "§ 52.  Employers' liability to employee of employee or contractor permitted to enter upon premises
>
> An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe. 1915, June 2, P.L. 736, art. II, § 203; 1937, June 4,

---

1. The relevant part of the contract reads as follows:
"We hereby submit our estimate to supply field labor and supervision only to install column cover brackets at the following rates:
    Journeyman Ironworkers $11.00 per hr.
    Ironworker Foreman $11.50 per hr.
    Ironworker Superintendent $12.50 per hr.
Superintendent, Foreman, and four (4) Journeymen to be used on the job.
Payment to be made each Wednesday for previous weeks time.

All material, tools, and equipment necessary to complete job to be *supplied by D. D. Davis Company*."

2. It is well established in Pennsylvania Law that a statutory employer cannot be sued for negligence. Capozzoli v. Stone & Webster Engineering Corp., 352 Pa. 183, 42 A.2d 524 (1945). Sarne v. Baltimore & Ohio Railroad Co., 370 Pa. 82, 87 A.2d 264 (1952).

P.L. 1552, § 1; 1939, June 21, P.L. 520, § 1.

"Contractor" is defined in § 105 of the Act as follows:

"§ 25. 'Contractor' defined

The term "contractor," as used in article two, section two hundred and three, and article three, section three hundred and two (b), shall not include a contractor engaged in an independent business, other than that of supplying laborers or assistants, in which he serves persons other than the employer in whose service the accident occurs, but shall include a subcontractor to whom a principal contractor has sub-let any part of the work which such principal contractor has undertaken. 1915, June 2, P.L. 736, art. I, § 105; 1937, June 4, P.L. 1552, § 1; 1939, June 21, P.L. 520, § 1.

Billante argues that Mainstream was an independent contractor, not a subcontractor, and thus Davis was not his statutory employer and is not protected by § 203. The fact that Davis and Mainstream entered into a cost-plus contract for the performance of specialized repair work, Billante argues, indicates that Davis had not reserved control over the means of accomplishing the work and Mainstream, therefore, was an independent contractor.

■ To decide the plaintiff's motion we need not rule on whether or not Mainstream was an independent contractor because even if it was that fact alone would not defeat Davis' statutory employer defense.

■ Generally speaking, the Act does not distinguish between subcontractors and independent contractors, except when the independent contractor works directly for an *owner*. Frankel v. International Scrap Iron and Metal Co., 157 F.Supp. 709 (E.D.Pa.1957). Qualp v. James Stewart Co., 266 Pa. 502, 109 A. 780 (1920). Mainstream may be an independent contractor for other purposes, but for purposes of the Act as applied to these facts whether or not it is an independent contractor is irrelevant. Under the Act Mainstream is treated as a subcontractor "because its contract is subordinate to and under the principal contract, though in the business world it may be independent; but as regards this transaction its contract is a dependent one, wherein he agrees to do all or a part of that which another has agreed to do." Qualp v. James Stewart Co., 266 Pa., at 508, 109 A., at 781.

Plaintiff relies heavily on Brooks v. Buckley and Banks, 291 Pa. 1, 139 A. 379 (1927) for the proposition that in all cost-plus contracts "the owner with whom the contract is made is not within the Compensation Act." 291 Pa., at 11, 139 A., at 383. The reliance is misplaced, however, because here the contract was not made with the owner. The contract was between Mainstream and Davis, the general contractor. Had the contract been between Mainstream and the United Methodist Church Union reliance on *Brooks* would have been persuasive.

Accordingly, Billante's motion for summary judgment made on the ground that since he was an employee of an independent contractor, Davis was not his statutory employer and therefore not entitled to invoke the statutory employer defense is denied.

Deciding that Davis is not precluded from raising the statutory employer defense, however, does not decide whether Davis is protected by the defense as a matter of law. We must, therefore, turn to a discussion of the defendant's motion for summary judgment.

■ Under Pennsylvania law five criteria must be satisfied to establish the existence of the statutory employer status. McDonald v. Levinson Steel Co., 302 Pa. 287, 294–295, 153 A. 424 (1931).

The five elements are:

1. There must be "an employer who is under contract with an owner or one in the position of an owner."

2. The premises must be "occupied by or under the control of such employer."

**124**

3. There must be a "subcontract made by such employer."

4. A part of the employer's "regular business" must be "entrusted to such subcontractor."

5. There must be "an employee of such subcontractor."

The plaintiff does not dispute that the first and last of these five elements are satisfied. It is obvious from the pleadings that Davis was under contract with the owners, the United Methodist Church Union; and that Billante was an employee of Mainstream, a subcontractor to Davis.[3]

It is the second, third and fourth elements which are in dispute.

Billante argues first that there is no evidence of record that Davis occupied or controlled the premises the day when he was injured. He does not contest that Davis controlled the premises generally, only that there is no evidence of record that Davis controlled the premises on the date of the accident. He also argues that whether or not Davis controlled the premises is a jury question and not proper for disposition on summary judgment.

We think that the record amply supports the conclusion that Davis controlled the premises on the day Billante was injured.[4]

To meet the control element it is not necessary that the employer actually be in direct, present supervision over the specific place where the accident occurred. It is sufficient if the employer had control or the right to control the area which encompassed the site of the accident. McSparran v. Hanigan, 225 F.Supp. 628 (E.D.Pa.1963), aff'd per curiam, 356 F.2d 983 (3rd Cir. 1966).

Edward J. Kelly, Davis' field superintendent on the project, stated in an affidavit filed in support of Davis' motion that in "December of 1970 and January of 1971, and for periods of time prior and subsequent thereto" Davis controlled which subcontractors worked on the site, when they began work and in what area; that Davis scheduled all delivery of matterials to the site; that subcontractors needed Davis' approval before scheduling overtime work; that Davis built and maintained a barricade around the entire site, including the area where the plaintiff was injured; and that Davis supplied the temporary electrical power used by Mainstream employees in December, 1970, and January, 1971.

The Kelly affidavit, which is uncontested by the plaintiff, amply establishes that Davis had control over or the right to control the area where the plaintiff was injured. It is true that the affidavit does not say specifically that Davis exercised control on January 7, 1971, but we think that it is obvious from the affidavit that such was the case. Further, the facts are clear and uncontroverted and the plaintiff has not presented facts which would create a jury issue as to this element of the defense.

Billante next contends that Mainstream was an independent contractor and the third element, therefore, is not satisfied. Billante argues that Mainstream was an independent contractor, not a subcontractor, because the contract with Davis was a specialized repair agreement to be billed on a cost-plus basis.

Davis disputes the characterizations of the contract as a "cost-plus" contract and of the work by Mainstream as "repair work." It also contends that whether it was a "cost-plus" contract for "repair work" is irrelevant because Mainstream was a subcontractor under the Act in any event.

We agree with Davis that under the circumstances characterization of what Mainstream was engaged to do or how it was to be paid are irrelevant. As we discussed and ruled in the portion of

---

3. Billante does not dispute he was employed by Mainstream. Whether Mainstream was a subcontractor is, of course, disputed.

4. January 7, 1971.

this opinion dealing with the plaintiff's summary judgment motion, under the Act Mainstream was acting as a subcontractor. We find that the third element has been satisfied.

 Finally, Billante argues the contract with Davis did not entrust to Mainstream a part of Davis' "regular business" since Mainstream was engaged to do "repair work."

The Third Circuit has held that the "regular business" requirement "is satisfied wherever the subcontracted work was an obligation assumed by a principal contractor under his contract with the owner." Jamison v. Westinghouse Corporation, 375 F.2d 465, 468 (3rd Cir. 1967).

Apparently the plaintiff concedes that if Davis had contracted initially with Mainstream to install the covers then this element would have been satisfied. The plaintiff contends, however, that since Davis tried to do the work, did it improperly,[5] and then contracted with Mainstream to do the job, Mainstream was doing work outside of Davis' "regular business."

We do not find the plaintiff's argument persuasive. Davis contracted with the Methodist Church Union to construct the entire building, therefore, any part of the construction was within the scope of its "regular business." The fact that it tried to do a portion of the construction instead of subcontracting it and, finding it was unable to do the work, then decided to subcontract it does not remove the work, in our view, from the scope of Davis' "regular business."

We find that Davis has satisfied all five elements necessary to establish the statutory employer defense and is entitled to a summary judgment in its favor.

Motions for summary judgment also have been filed by two third-party defendants—Hartford Accident and Indemnity Company and Mainstream Corporation. We assume that since we have granted the defendant and third-party plaintiff's motion for summary judgment, and since the third-party defendants have filed no counterclaims that their motions for summary judgment are now moot and require no ruling.

---

5. Davis, of course, disputes that the work was improperly done.