## LARSEN v. UNITED GAS IMPROVEMENT CO.

(Circuit Court, E. D. Pennsylvania. July 21, 1910.)

No. 810.

1. MASTER AND SERVANT (§ 278*)—NEGLIGENCE (§ 134*)—SAFE PLACE—DANGEROUS BUILDING.

In an action for death of the servant of a subcontractor by the collapse of a building in process of alteration, evidence *held* to sustain a finding of negligence on the part of both the contractor and the subcontractor in the manner of their tearing out the old part of the building and putting in shoring.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278;* Negligence, Dec. Dig. § 134.*]

2. MASTER AND SERVANT (§ 332*)—DEATH OF SERVANT—INDEPENDENT CONTRACTOR.

In an action against the lessee of a building in process of reconstruction for the death of the servant of a subcontractor by the collapse of the building, owing to the negligent manner in which the work was accomplished, whether one of the lessee's architects, who the contract provided should superintend the work, in fact directed the manner and method of doing the work, so as to charge the lessee with the consequences of the contractor's negligence in performing it, *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1276; Dec. Dig. § 332.*]

At Law. Action by Elizabeth Larsen against the United Gas Improvement Company. Verdict for plaintiff. On defendant's motions for judgment non obstante veredicto and for a new trial. Denied.

W. W. Mentzinger, Jr., and John McClintock, Jr., for plaintiff.

R. Stuart Smith and Morgan, Lewis & Bockins, for defendant.

HOLLAND, District Judge. This action was instituted by the plaintiff to recover damages for the death of her husband, who was killed in the falling of a building at the northeast corner of Eleventh and Market streets, Philadelphia, on the 15th day of July, 1909. Additions, alterations, and improvements were being made to this building, which required the tearing out of the two lower stories and almost the entire interior. During the progress of the work the upper stories were shored up, which made the work especially dangerous.

The defendant had entered into a contract with the Sax & Abbott Construction Company to do this work, in accordance with certain plans and specifications, which had been prepared by Rush & Lacey, architects. Sax & Abbott Company entered into a written contract with H. Sheeler & Co. for the furnishing of all labor, materials, tools, rigging, scaffolding, and appliances necessary to completely finish the work of shoring the walls, including the cutting of the walls and floors, and other cutting necessary to erect shores and needles, for which it was to receive a certain compensation. This work was the most important to be done, requiring knowledge and judgment in order that the place might be safe and secure against accident. The contractor and subcontractor started the work about the same time,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and continued from about the middle of May to the 15th day of July, when the building collapsed. There was evidence of negligence and imperfect work, and the falling of the building was no doubt the result of divided authority, bad management, and negligence. The husband of the plaintiff, who was employed by H. Sheeler & Co., the subcontractor, was killed by the falling of the building, and she alleges in her statement of claim that the defendant "by its duly authorized agents, servants, and employés was engaged in making certain improvements, alterations, additions and repairs," and that it "negligently directed the work in such a manner that the entire structure became weakened and dangerous to workmen engaged in and about the making of said improvements, alterations, additions, and repairs, and failed to provide a reasonably safe place for the workmen to perform their duties, and failed to use due and proper care in the selection and retention of competent agents to conduct and direct the operation of said building." So that, as tersely stated by the defendant, the plaintiff, in order to recover in this action, must show that the negligence resulting in the accident was the negligence of an employé or agent of the defendant who was doing the work for the defendant.

There was sufficient evidence submitted to carry the case to the jury on the question of negligence on the part of the contractor and subcontractor in their manner of tearing out the old part of the building and in putting in the shoring, which together resulted in making the place so obviously dangerous that William R. Hall, an experienced contractor and builder, three or four days before the collapse, observed that the work of shoring was done in a way to make it very dangerous, and the holes were cut in the partition wall from the foundation up in a very irregular manner. The building was then regarded by him in such a dangerous condition that he would not risk going to the fourth floor, but got out as quickly as he could. This contractor was doing some work on Market street, but for several days prior to the accident warned every one he knew not to stand near the building as it was liable to fall.

This evidence, together with that of the other witnesses, was, we think, sufficient on the question of the negligent performance of the work. The only other question then is as to whether or not the defendant was responsible for this negligence. There is no doubt that upon the contract alone made between the defendant and the Sax & Abbott Company the latter is an independent contractor, for whose negligence the defendant would not be liable.

The Sax & Abbott Company agreed to "provide all material and perform all work for the alterations and additions to these properties," in accordance with the plans and specifications prepared by Rush & Lacey, architects, and it is further agreed that the work "is to be done under the direction of said architects acting as counsel for the lessee, * * * and that the decision of the architects as to the true intent of the drawings and specifications shall be final." This supervision or direction reserved in the contracts, however, evidently is intended only to give the architects power to enable them to see to it that the

contractors and workmen were performing the work in accordance with plans and specifications, and authorizes them to pass upon the question as to whether or not they were complying with the requirements in these plans and specifications, and, of course, under the circumstances, if there had been nothing more in this case than the agreement showing the relation of the parties, the defendant would not be responsible for any negligence which might have occurred. But the plaintiff contends that notwithstanding the existence of this contract of employment made and entered into between the defendant and the Sax & Abbott Company, that the defendant company had Lacey, one of its architects, who was also an engineer, in the building daily, and that the evidence shows that he was in direct charge of the manner and method of performing the work. There was evidence that Lacey had a desk in the building; was there daily; settled disputes among the bricklayers; directed how certain bolts should be used; and at one time in the progress of the work, when a crack on the Eleventh street side of the building appeared, that work was stopped by the foreman of the Sax & Abbott Company to submit the question of its danger to Lacey, and that after an examination of the crack by Lacey and the foreman of the contractor the work was continued. The evidence as to the control by Lacey is found in the testimony of Anderson and Fickes, skilled workmen, and Coleman, who was a "labor boss," and it was the contention of the plaintiff that this was sufficient to carry the case to the jury upon the question as to whether or not the defendant was directing the manner and method of performing the work as well as seeing to it that the work generally was done in accordance with the plans and specifications.

The defendant offered no evidence, and submitted a request that the court charge the jury that under all the evidence the verdict should be for the defendant. This request was refused. The case was submitted to a jury on the question as to whether or not the supervision of the defendant was such as to make the contractor his agent, for whose negligent acts the defendant would be liable, and there was a verdict in favor of the plaintiff.

The defendant practically abandoned its motion and reasons for a new trial at the argument, and insisted upon the motion for judgment non obstante veredicto upon the ground that the Sax & Abbott Company was an independent contractor, for whose negligent acts, if any, the defendant was not liable, and insists that the case at bar is controlled by the principle followed in a long line of cases, and aptly stated recently by the Supreme Court of Pennsylvania in Miller v. Merritt, 211 Pa. 127, 60 Atl. 508. The language used there is directly applicable to the provision in the agreement in this case:

"It is apparent * * * that the clause of the agreement * * * conferred on the owner's superintendent of construction only such supervisory powers as would enable him to see that the defendants were performing the work in accordance with the provisions of the contract and specifications, and gave him no authority to direct the workmen as to the methods of executing the details of the work."

The same principle was applied in Morning v. Cramp & Company (C. C.) 170 Fed. 364, a case recently tried in this district before Judge

McPherson. The question of independent contractor is considered in a very complete note to the case of Richmond v. Sitterding, 101 Va. 354, 43 S. E. 562, 65 L. R. A. 445, 99 Am. St. Rep. 879. There is no doubt at all but that this line of decisions establishes the proposition that where the supervision of the owner does not extend to the manner and method of doing the work, but only empowers the superintendent to see to it that the work is done by the contractor in accordance with plans and specifications, the latter alone is liable for his own negligence, and it cannot be visited upon the owner of the property. But, in this case, the plaintiff contended there was evidence to show that the supervision of Lacey extended not only as to results, but that the manner and method of doing the work was passed upon and controlled by him, and that the evidence of Anderson, Fickes and Coleman, together with other facts and circumstances, was sufficient to go to the jury upon the question as to whether or not Lacey was not in such control. There is no dispute as to the testimony of these witnesses and other facts and circumstances with regard to what Lacey actually did about the building; but while the plaintiff insists that the proper inference to be drawn from his acts is that he was in control of the manner and method of doing the work, the defendant urges that this evidence shows that Lacey did no more than was required of him under the contract with the Sax & Abbott Company; that his acts were entirely consistent with his authority to direct as to results; and that the court should enter a judgment in favor of the defendant. But we cannot agree that it is the duty of the court to decide whether or not the facts and circumstances submitted as to Lacey's authority warrant the inference that he controlled the manner and method of doing the work, or that he directed as to results only. This was a question for the jury.

In the case of Bain v. Works Company, 223 Pa. 96, 72 Atl. 279, there was a recovery allowed for personal injuries against the defendant who had employed the contractor to do the work, but had paid the wages of the men employed by the contractor as they came due. Justice Stewart, in rendering the decision of the Supreme Court, said, inter alia:

"The evidence on the part of the plaintiff would have wholly failed to associate the defendant with any responsibility in connection with the erection of the tanks *except for one fact* which was undisputed. Though not a single one of the workmen who were engaged says that he was originally employed by any one known at the time to represent the defendant, yet, all say that the wages they received were paid them, in whole or in part, by the defendant company, and not by Robinson. *This circumstance, unexplained, would warrant the inference that the contract between defendant and Robinson had been ignored or superseded.* The defendant advanced an explanation, wholly consistent with its position, that the work was being done by Robinson under contract when the accident happened. It was this: That Robinson reported to the company that he was without funds to pay the men he had employed, and asked that the company do so and charge him with the advancement; that rather than have the work fail, or run the risk of liens, the company acceded to his request, and paid the men directly. *This raised a question of fact which necessarily drew the question to the jury. The explanation rested wholly upon oral testimony, which, if believed by the jury, would leave the contract between the defendant and Robinson wholly unaffected by the circumstance that the de-*

*fendant had paid the wages.* If the explanation was a true statement of facts, it was more than sufficient to overcome the inference of abandonment of the contract from the payment of wages. *Whether it was true was a question for the jury."*

The inference, to be drawn as to the extent of the management and authority exercised by Lacey, from the acts he did and orders given in connection with the work, was for the jury. It was properly submitted, and a verdict rendered in favor of the plaintiff. This being a question of fact, it was decided by the proper tribunal, upon competent evidence, and we therefore are compelled to refuse the motion for judgment non obstante veredicto, and overrule the motion for a new trial.