UNITED GAS IMPROVEMENT CO. v. LARSEN.

(Circuit Court of Appeals, Third Circuit. November 28, 1910.)

No. 30.

MASTER AND SERVANT (§ 316*)—DEATH OF SERVANT—SUBCONTRACTOR—INDEPENDENT CONTRACTOR.

Defendant, the lessee of a building, desiring alterations, procured plans which were approved by the city building bureau, and a permit was granted thereon to the contractor. The contract stipulated that the contractor should provide all materials and perform all work required by the drawings and specifications prepared by the architects. The contract provided that the work should be done under the direction of the architects acting as counsel for the lessees, etc.; that the decision of the architects as to the true intent of the drawings and specifications should be final; and that the contractor should bear all loss or damage from accidents which might occur to neighboring property or persons during the progress of the work, whether from accidents or carelessness on his part, or on the part of his representatives, until possession was taken by the owner. Held, that the contractor was an independent contractor, and that the lessee not having interfered with the work either by itself or its architect, was not liable for the death of a servant of a subcontractor caused by the collapse of a building due to the negligent manner in which the work was performed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1242, 1243; Dec. Dig. § 316.*

Who are independent contractors, see note to Atlantic Transport Co. v. Coneys, 28 C. C. A. 392.]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by Elizabeth Larsen against the United Gas Improvement Company. From a judgment for plaintiff (180 Fed. 268), defendant brings error. Reversed and remanded, with instructions.

R. Stuart Smith and Charles E. Morgan, for plaintiff in error.

W. W. Mentzinger, Jr., and John McClintoch, Jr., for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

BUFFINGTON, Circuit Judge. In the court below Mrs. Elizabeth Larsen recovered a verdict against the United Gas Improvement Company for damages sustained by her through its alleged negligence in causing the death of her husband. The gas company moved for judgment notwithstanding the verdict. In an opinion reported at 180 Fed. 268, the court refused this motion and directed judgment for the plaintiff to be entered on the verdict. Whereupon the defendant sued out this writ. The case turns on the question whether there was evidence of negligence on the part of the gas company.

That company was the lessee of a building in Philadelphia, and, while it was having it altered, it collapsed and killed Mrs. Larsen's husband, a laborer. The negligence alleged in the statement of claim was:

"The said negligence of the defendant company, United Gas Improvement Company, as aforesaid, consisted, inter alia: (1) In removing the front walls

of said buildings without bracing the same or clamping the joists; (2) in removing the stairways and horses of said stairways from said buildings, without bracing the floors; (3) in hauling heavy timber from the ground floor to the second floor of said buildings through the areaway made by the removal of the stairways; (4) in jarring the buildings by the lifting of the timber in the manner aforesaid; (5) in removing portions of the party walls without bracing the buildings; (6) in attempting to make the aforesaid alterations, improvements, additions and repairs to the said buildings, in accordance with faulty and defective plans and specifications; (7) in permitting the husband of the plaintiff, Charles Hilmer Larsen, and other workmen engaged upon said buildings to remain thereon after the said buildings were known by the defendant company, United Gas Improvement Company, as aforesaid, to be in a dangerous and unsafe condition; (8) in attempting to alter the said buildings in the manner aforesaid, in view of the unsafe overlap of the joists; (9) in its failure to use due and proper care to select and retain competent and skillful agents, servants and employés, to direct the work; (10) in weakening the entire structure through the carelessness, negligence, unskillfulness and incompetence of the agents, servants and employés selected by it to direct the said improvements, alterations, additions and repairs to the said building in a manner not in accordance with the approved building methods, but, on the contrary, in a careless, negligent, unskillful and unscientific manner; (11) in removing numerous joists, without bracing the said buildings; (12) in hazarding the lives of those engaged in or about the said work by failure to comply with the regulations of the bureau of building inspection, and in stinting said work, and generally in making the said improvements, alterations, additions and repairs, in a negligent, careless, unskillful and unworkmanlike manner."

The proofs show the following facts: The gas company had drawings and specifications for alteration of the building prepared by Rush & Lacey, architects. These plans were duly approved by the city building bureau and a permit granted to the Sax & Abbott Construction Company to do the work; it having so contracted with the gas company. Their contract stipulated that the contractor would "provide all materials and perform all work for the alterations and additions" required by the contract as shown in the drawings and specifications prepared by Rush & Lacey, and "that the work included in the contract is to be done under the direction of the said architects acting as counsel for the lessees under the following conditions and in the following manner, and that the decision of the architects as to the true intent of the drawings and specifications shall be final." It further provided the contractor "must provide all necessary materials, utensils and labor for the completion of the work and must bear all loss or damage from accident which may occur to the neighboring property or any person or persons during the progress of the work, whether from accidents or carelessness on his part or on the part of his representatives until possession is taken by the owner." Subsequently the Sax, etc., Company gave a subcontract for the shoring and structural iron work to the Sheeler Company. Thereafter the two companies continued their several shares of the work, and during their operations the decedent's husband, who was working for the Sheeler Company, was killed by a collapse of the building.

As between the gas company and the Sax Company the latter was, in view of this contract, an independent contractor. Casement v. Brown, 148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582. The legal effect of such a contract was to transfer to the contractor possession of the building, reserving to the gas company the privilege, through its

architects, of inspecting the work and enforcing compliance with plans and specifications. It gave to the owner no right to dictate as to the means of performance, but only empowered it to insist, through the architects, on a building completed as provided in the plans and specifications. There is no proof or charge that the gas company was negligent in its choice of either architect or builder, and with the negligence of neither could the gas company be charged. Burke v. Ireland, 166 N. Y. 305, 59 N. E. 914; Mansfield Coal Company v. McEnery, 91 Pa. 185, 36 Am. Rep. 662.

The only thing to connect the gas company with the work was the contract. It took no part by its employés in conducting the work, did not interfere with it, or indeed was not present upon it. Had the architects undertaken to direct or control the work, they would have been outside the line of any duty they owed the gas company, and any such unauthorized acts would not make the architects its agents in that respect. But the proofs do not go to even that length, for they fail to show any assumption by the architects of control over the work. All of the acts which are cited to show such assumption are attributable to that supervision and inspection which the contract provided the architects should exercise to insure the work being done according to the terms stipulated. Moreover, it is not shown that even in such instances of alleged control that anything the architects did, suggested, or required, caused the accident. Whosoever, if anybody's, negligence it was that resulted in the death of Mr. Larsen, there is no proof to fasten that negligence on the gas company.

The judgment entered must therefore be reversed, and the case remanded, with instructions to the court below to enter judgment for the defendant n. o. v.