388 P.2d 85 (1963)
BRUSH HAY AND MILLING COMPANY and Pacific Employers Insurance Company and the Industrial Commission of Colorado, Plaintiffs In Error,
v.
Wayne W. SMALL, Defendant In Error.
No. 20707.
Supreme Court of Colorado, En Banc.
December 23, 1963.
Rehearing Denied January 20, 1964.
Wormwood, O'Dell & Wolvington, Denver, for plaintiffs in error Brush Hay & Milling Co. and Pacific Employers Ins. Co.
Duke W. Dunbar, Atty. Gen., Peter L. Dye, Asst. Atty. Gen., State of Colorado, for plaintiff in error The Industrial Commission of Colo.
Edgar H. Brandenburg, Brush, for defendant in error.
*85 McWILLIAMS, Justice.
The Industrial Commission denied Wayne W. Small's claim for workmen's compensation benefits on the ground that at the time and place of the accident Small was not an "employee" of Brush Hay & Milling Company, which company will hereinafter be referred to as Brush Hay, and that his status was that of an independent contractor. Upon judicial review of this administrative determination, the trial court set aside the order and finding of the Commission and directed the Commission to enter an order finding that Small was an employee of Brush Hay and to thereafter process his claim for benefits "in accordance with the laws of the State of Colorado". By writ of error Brush Hay, its compensation insurance carrier and the Commission seek reversal of the judgment of the trial court.
The accident which forms the basis for this claim occurred on the premises of Brush Hay on August 1, 1961 at a time when Small and four persons who were admittedly "employees" of Brush Hay were in the act of "pulling pipe" from a well, the "pulled pipe" coming in contact with a high voltage line and thereby causing grievous injuries to Small as well as electrocuting one of those assisting in the operation.
Small was a licensed electrician and from about 1944 until the date of the accident was doing business in the Brush area under the trade name of Small Electric Service. Small's services were available to the general public, Small testifying that he "did electrical work for anybody that wanted electrical work".
The "main business" of Brush Hay was described as the "hauling of grain and the grinding of feed", and not the electrical business. Brush Hay had its own maintenance man who was responsible for the general repair and upkeep of its equipment and property, but it was customary for Brush Hay to "call in" skilled tradesmen as such were needed. Specifically, from 1944 to the date of the accident it was the wellestablished practice of Brush Hay that if there "was anything in the electrical field [that] we couldn't do, we called Wayne Small". In this regard Small testified that Brush Hay did "all their own electrical maintenance work except something that needed a licensed electrician to oversee it or do the work, or something that they didn't have the knowledge to do themselves."
Small Electric Service was located directly across the street from Brush Hay, and when the latter company desired Small's services it would either telephone him or even "come across the street and personally tell me." Small stated that "they showed me what to do" and that he would then proceed to do the electrical work as required, generally using his own tools and equipment although occasionally using those belonging to Brush Hay.
It was the unwritten but nevertheless unvarying understanding between Small and Brush Hay that Small would be paid for his services at the rate of $3 per hour, and hence when a particular job was completed Small would bill Brush Hay in an amount equal to the time spent, in hours, times three. From time to time Small also sold materials or electrical supplies to Brush Hay, and in this regard it was agreed that Small would bill Brush Hay for all such materials in an amount equal to his out-of-pocket cost, plus ten per cent. These bills, be it for services or merchandise, were on a form which bore at the top thereof the following notation:
 "SMALL'S ELECTRIC SERVICE
 Licensed & Bonded Electricians
 Light Fixtures & Wiring Supplies
 919 W. Edison Phone Vi 2 -4516
 Brush, Colo."
When thus billed, Brush Hay would then issue its check payable to Small Electric Service and in so doing made no deduction for social security, nor did it ever make any deduction for state or federal income tax, as it did with its employees.
As for the amount of work which he rendered Brush Hay, Small testified that from 1944 to the date of the accident "it would *86 average out from once to twice a month" and that "sometimes I might be there two or three days, and other times it might be an hour to two or three hours."
Some time prior to August 1, 1961 Small sold Brush Hay a submersible seal-type pump, at cost plus ten per cent, which pump was thereafter installed by Brush Hay but with Small himself "connecting the electricity to it." Small in due time, as per their arrangement, billed Brush Hay for the pump and services rendered by him in connecting the electricity to this pump. The pump itself was placed in a well located on the premises of Brush Hay.
Very shortly prior to August 1, 1961 Brush Hay informed Small that the pump was not functioning properly. On July 29, 1961 Small inspected the same and found that the difficulty was in the motor proper and so advised Brush Hay. The guaranty period on the pump not having expired, it was decided that Brush Hay would take the pump to Denver and have the manufacturer remedy the situation.
On August 1, 1961 one Dunn, who was apparently the "boss" at Brush Hay, "hollered" across the street to Small, requesting that Small come and "help them pull the pump." Small respondent and at the hearing before the referee stated that it was his understanding that the services which he was about to perform in connection with the "pulling of the pump" were not "to be done on any special arrangement" but on the same basis as all of his prior service for Brush Hay. Specifically, he declared that it was his intention once the job was completed to bill Brush Hay for time spent, in hours, times three.
When Small arrived Dunn and three employees of Brush Hay were already at the well site, with Dunn apparently supervising the operation. Dunn and Small got down into the well proper, the others remaining around the well above ground. According to Small, he and Dunn disconnected the pipe (1 ½ inch copper pipe) from the pump proper and "started lifting the pipe up to the other guys to take hold of." Small elaborated by mentioning that there was a "cable that went down to the motor and this cable was taped to the pipe and as we lifted it out * * *. I cut the tape so we could lift the pipe out." Small went on to state that the last thing occurring immediately prior to the accident which he now recalls was his suggesting to Dunn that they "take the pipe apart" and that Dunn said "no". It was at about this point that the pipe came in contact with a high voltage line with the disastrous results already described.
In our view the issue as to whether Small was an employee of Brush Hay poses a question of law, not a question of fact. We find no dispute or disagreement as to the facts and circumstances pertaining to the nature of Small's relationship with Brush Hay or the events leading up to the accident itself. True, there is sharp disagreement as to the legal significance of these facts and events, but still no dispute as to the facts themselves. Under such circumstances the finding of the Commission is not binding on the courts, and it is the responsibility of the courts to apply the law to the factual situation at hand. See Industrial Commission, et al. v. Bonfils, 78 Colo. 306, 241 P. 735 and Meyer v. Lakewood Country Club, 122 Colo. 110, 220 P.2d 371.
C.R.S. `53, 81-2-7, as amended, provides as follows:
"The term employee shall mean and include: * * *
(2) Every person in the service of any person, association of persons, firm, private corporation, * * * under any contract of hire, express or implied, * * * but not including any persons who are expressly excluded from this chapter or whose employment is but casual and not in the usual course of the trade, business, profession or occupation of his employer. * * *
It is evident that this statutory definition' of an "employee" being couched' in rather *87 general language is not always too helpful in determining the nature of a particular business relationship. Review of the numerous decisions of this Court disclose that there is no hard and fast rule which can be followed with mathematical precision in determining whether a person is an "employee" or not. Certain tests have been laid down, no one of which is determinative, and in the last analysis the matter is finally resolved by a careful examination and evaluation of the facts and circumstances of the case at hand.
So, in Industrial Commission of Colorado v. Hammond, 77 Colo. 414, 236 P. 1006, after candidly admitting that "[i]t is not always easy to determine when one performing labor for another is a servant and when a contractor", this Court went on to state:
"Each case must be decided upon its own facts, and when these are in dispute [in the instant case the facts are not in dispute], the finding of the commission is final. Among the factors more or less controlling are: Does the workman give all or only a part of his time to the work? Does the contract contemplate labor on the job, or the completion of it, or some portion of it? Has the laborer or the employé control of the details? Which may employ, control, and discharge assistants? Which furnishes the necessary tools and equipment? May either terminate the employment without liability to the others? Is compensation measured by time, or by the piece, or by lump sum for the entire task? Of these the most important, in determining the main question, is the right of either to terminate the relation without liability. Where such right exists, the workman is usually a servant. Where it does not exist, he is usually a contractor. The measure of compensation is also important, for where it is based upon time or piece the workman is usually a servant, and where it is based upon a lump sum for the task he is usually a contractor. Where the employment is general, as opposed to one for the completion of a given task according to plan, price, and terms agreed upon, the relation of master and servant is presumed, in the absence of proof to the contrary." (Emphasis supplied)
A consideration in depth of the definition of an "employee" as that word is used in the field of workmen's compensation law is found in Larson's Workmen's Compensation Law, volume 1, pages 623-679. Larson questions whether the "right to control the details of work" test is really the "most relevant factor" in ascertaining whether a person rendering services for another is an employee, and he suggests that a better and more logical test would be "the relative nature of the claimant's work in relation to the regular business of the employer." "The relative nature of the work test", according to Larson, contains these ingredients:
"* * * the character of the claimant's work or businesshow skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so onand its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job."
Applying the foregoing criteria to the facts of the instant case we conclude that the trial court erred in setting aside the finding of the Commission that Small was not an employee of Brush Hay, but an independent contractor.
In our analysis of the problem we attach significance to the following:
1. The nature of the service rendered Brush Hay by Small, i. e. services of a licensed electrician and its *88 lack of any close relationship with the regular business of Brush Hay.
2. Small rendered services to Brush Hay for only a comparatively small part of his total work month.
3. Small was "called in" by Brush Hay to do a specialized "given task" and not for general employment in its regular business.
4. Because of his superior knowledge in the filed of electricity Small controlled the details of his services.
5. Small generally performed his services by the use of his own tools and equipment.
6. Only when the particular task at hand was completed would Small bill Brush Hay with Brush Hay then remitting in full with no deductions for social security or state or federal withholding tax.
The manner in which Brush Hay made payment to Small clearly indicates that prior to the accident, at least, neither Small nor Brush Hay regarded the former as the "employee" of the latter. The intent of the parties, though not necessarily controlling in this type of a situation, is nonetheless one of the many factors properly to be considered in determining the status of one rendering services for another.
Small suffered extensive and grievous injuries in this most unfortunate occurrence, but under the circumstances disclosed by the record as made before the Commission we hold that he was not an "employee" of Brush Hay as that word is used in our Workmen's Compensation Act. Hence, the judgment is reversed and the cause remanded with directions that the trial court enter judgment affirming and approving the award of the Commission.