554 A.2d 159

George M. Lynch, Petitioner *v.* Workmen's Compensation Appeal Board (Connellsville Area School District), Respondents.

Argued October 3, 1988, before Judges BARRY and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*George M. Lynch*, for petitioner, for himself.

*H. Reginald Belden, Jr., Stewart, Belden and Belden*, for respondent, Connellsville Area School District.

OPINION BY SENIOR JUDGE NARICK, February 2, 1989:

The sole issue on this appeal is whether the Workmen's Compensation Appeal Board (Board) erred in de-

ciding that George Lynch (Claimant) was an independent contractor rather than an employee of the Connellsville Area School District (District) for the purpose of workmen's compensation under The Pennsylvania Workmen's Compensation Act.[1] Claimant did not appeal the dismissal of his petition filed against the Pennsylvania Interscholastic Athletic Association (PIAA).[2] The causal relationship of the alleged injury and the amputation of Claimant's lower right leg was not litigated but reserved, pending decision of whether Claimant was an independent contractor rather than an employee.

The parties have presented no Pennsylvania appellate court decision addressing the question of whether a football official's relationship, either on the high school or college/university level is that of an employee or independent contractor of a high school or college/university for the purpose of workmen's compensation. Thus, the question now before us is one of first impression. The referee, after five days of hearings and making extensive findings of fact and conclusions of law, found Claimant's relationship to be that of an independent contractor and dismissed Claimant's petition. The referee's findings, conclusions and order were affirmed by the Board. We affirm.

Our scope of review is limited to ascertaining whether constitutional rights have been violated, an error of law has been committed, or whether necessary find-

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1031.

[2] The Board affirmed the referee's decision dismissing the claim petitions filed against the District and the PIAA because the Claimant was not an employee of either the District or the PIAA, but rather an independent contractor at the time of the alleged injury. Further, all proceedings against the PIAA (claim petition filed against the PIAA, February 15, 1984) were barred and dismissed because he did not give the 120 day statutory notice to the PIAA after he first received knowledge that his amputation was a result of an alleged injury on September 21, 1981.

ings of fact are supported by substantial, competent evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. *See Blue Bell Printing v. Workmen's Compensation Appeal Board,* 115 Pa. Commonwealth Ct. 203, 539 A.2d 933 (1988).

The definition of independent contractor is not set out in the Act, but the law in determining whether a relationship is either employer-employee or an independent contractor is ably set forth in *Surowski v. Public School Employees' Retirement System,* 78 Pa. Commonwealth Ct. 490, 467 A.2d 1373 (1983):

> In determining whether a relationship is one of employee-employer or independent contractor, certain factors will be considered which, while not controlling, serve as general guidance to the Court. These factors include: the control of the manner that work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; the skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is part of the regular business of the employer, and the right to terminate the employment at any time. *Hammermill Paper Co. v. Rust Engineering Co.,* 430 Pa. 365, 243 A.2d 389 (1968); *J. Miller Co. v. Mixter,* 2 Pa. Commonwealth Ct. 229, 277 A.2d 867 (1971).

*Also see: Davidson v. Workmen's Compensation Appeal Board (DeLeon),* 42 Pa. Commonwealth Ct. 30, 399 A.2d 1193 (1979).

However, the right to control is the most persuasive indication of one or the other. As stated in *Davidson,* 42 Pa. Commonwealth Ct. at 33, 399 A.2d 1193 at 1195:

"The first and probably most important factor is control of the manner in which the work is accomplished... ." Also, A. Larson, Larson's Workmen's Compensation Law Section 44 (1986), states, in part: "The traditional test of the employer-employee relation is the right of the employer to control the details of the work ... ."

Our review of the referee's findings and the entire record herein reveals the following. Claimant was 53 years of age at the time of his alleged injury during a high school football game which gave rise to his claim for workmen's compensation benefits. Claimant, a full-time practicing attorney had a part-time avocation and hobby of being a registered PIAA high school football official for approximately 22 years. He was assigned on September 25, 1981 as part of a five man officiating crew to referee a football game between the District, the home team, and Norwin High School. With seven seconds remaining in the game, Claimant was allegedly injured when he was "trapped" in a play situation and pushed off his right leg in order to avoid the ball carrier. His doctor, subsequently, described his injury as a partial tear of his calf muscle. Although not called upon herein to decide the causal relationship between the alleged injury and the amputation of his right leg below the knee in 1982, we note he was physically able and continued to officiate the remainder of his approximately eight other 1981 season high school assignments after September 25, 1981.

Claimant contends he was an employee of the District in its game with Norwin High School on September 25, 1981. Further, it appears to be his contention that if assigned his usual twelve games per season at different high schools, each of the home teams would be his employer for the purpose of workmen's compensation. *Davidson.* Claimant has the burden to establish the employer-employee relationship to qualify for workmen's

compensation. The question of whether Claimant was an independent contractor or employee is a question of law, reviewable by the Court.

The referee rendered the following pertinent findings in support of his conclusion that Claimant was not an employee of the District as set forth in his Fortieth Finding of Fact:

(a) He was paid by the job, not by the time spent doing the job, and no deductions were made from his pay,

(b) He was required to possess a certain skill to be a referee which skills are not possessed by people who are not so trained,

(c) He did in fact perform a similar service for other schools and organizations during the same season even after the so called work injury,

(d) He supplied his own clothing, flags, shoes and whistle,

(e) The home team had no right to dismiss the official at any time. No proof was submitted where an official was dismissed during a game by the home team and there is no proof that the principal of the home team at any school, anywhere, ever directed an official to change a ruling made on the field,

(f) The result of the work of the official is not intended to benefit the home team and in fact the official cannot be so directed,

(g) The home team did not reserve to itself the right to direct the manner in which the work was done.

Although the essential facts as to whether Claimant is an independent contractor or employee are not disputed, Claimant contends the Board erred as a matter of law in concluding that he was an independent contractor and

not an employee of the District. In support of his position, Claimant relies primarily on the comprehensive relationships of the various associations governing the public and private high schools' interscholastic athletic contests throughout the United States and the responsibilities of the game officials assigned to officiate in various sports, including football games.

The top governing body is the National Federation of State High School Associations (Federation) of which the high schools in the fifty states are members through their membership in the state associations. The PIAA, in the instant case, represents the District and other Pennsylvania high schools in the Federation. The Federation promulgates the rules for all high school sports, including football. All high schools are required to conduct their contests under the official playing rules enacted and published by the Federation. Also, the game officials, under whose supervision the football game is played, are required to have a thorough knowledge of the rules and officiate the game in accordance with said rules as well as the approximately sixty page Federation's Football Officials' Manual (Manual). The Manual sets forth the prerequisites for good officiating, mechanics of officiating, standard officials' uniforms, equipment (whistle, penalty marker, game card, pencil, bean bag to mark the spot of fumbles, and rubber bands to keep track of the number of downs), pre-game conferences and conduct relating to the officials' contacts with coaches and the public media. The PIAA Athletic Officials' Manual seeks to promote uniformity in all interscholastic sports competition and implements the Manual relating to football. The District herein provided all the physical equipment to conduct the game, including the field, game ball, score board, line to gain chains and field clock.

Under the PIAA constitution, all registered football officials are required to affiliate with a local PIAA chapter,

attend six chapter meetings, three before and three during the season, and, attend at least one annual interpretation meeting before the start of the football season. Claimant was required to pay dues to the PIAA, pass a yearly examination to establish his competency as an official and was assigned to officiate approximately twelve games in advance of the football season. He could not refuse an assignment without good cause, *i.e.* serious illness or a death in the family.

Further, under the PIAA constitution, the high school principal has overall control of all interscholastic athletic relationships in which the school participates. The District, at the time relevant herein, was a member of the Foothills Football Conference (Conference) made up of ten high schools in the Westmoreland County area, which competed against each other. The Conference is no longer in existence and it is now known as District 7 of the Western Pennsylvania Interscholastic Association League (WPIAL). The District and all other high schools in Pennsylvania, with few exceptions, belong to the PIAA. The Conference appointed a Commissioner, a retired football official who was not paid, to make assignments of football officials for the member schools' football games. After the games, the coaches submitted rating reports to the Commissioner, who, based on his personal evaluation and the said ratings, determined the status and future assignments of officials. During the 1981 football season, the officials were paid a flat fee of $30 per game by the home team, not the PIAA. The fee was negotiated by the officials' association and the Conference, not by the District or individual officials.

A substantial number of the facts set forth above are not supportive of Claimant's position. As noted above, in determining whether a relationship is one of employer-employee or independent contractor, no one test standing alone, except the right of control of the manner of the

work to be done, is decisive. We reject Claimant's argument that all of the rules and regulations set forth in the Federation's football rules, and the PIAA's manuals, *rise* to the level of providing the District the right to control and direct the manner of how the officiating shall be conducted during a football game.

*The critical question,* without the trappings, is whether Claimant's assignment to officiate the District's game gave the District the right to control and supervise the manner and method by which Claimant was to officiate the game after it started. In this case, the right of control of the officiating is properly tested by the manner and work of the officials during the course of the entire game. Here, in this record, there was no evidence to indicate that the District had, or exercised, any control whatsoever over the *manner* in which Claimant and the other officials performed their duties during the game. *City of Monessen v. Workmen's Compensation Appeal Board (Galanoudis),* 36 Pa. Commonwealth Ct. 247, 387 A.2d 1000 (1978).

Under the Federation's rules, the officials' jurisdiction over the game begins with the scheduled coin toss at midfield and ends when the referee declares the score final. The game is played under the supervision of the officials. All officials are responsible for decisions involving the application of rules, as well as their interpretation or enforcement. Often Claimant was required to make judgment calls, and it was his and the other officials' judgment alone which governed. The District did not choose Claimant as a referee for their game on September 25, 1981. They had to take whoever the Commissioner assigned for that game. The fact that the District paid the referee is not indicative of either type of relationship while the fact that Claimant was paid for a specified piece of work as an official is indicative of an independent contractor relationship.

Once the game started, the District exercised no control over Claimant or the other officials. Claimant was paid for one football game regardless of how long it took to play it. The game fee was paid shortly before the start of the game by the Athletic Director of the District. The officials were not on the District's payroll and no deductions were taken from their fee for taxes or social security. They were not given the benefits which other District employees received. They bought their own uniforms, shoes, hats, whistles and penalty markers, and provided their own medical insurance.

From a careful review of the findings and the entire record, the inescapable conclusion is that the District had no control over Claimant or the other officials once the game started. This is properly so because the very essence of the officials' position during a game requires that the officials be free from control by the District, the home team, or its opponent. To hold otherwise would subject the officials to influence by their employer's desires, to wit, the District, or any other high school when it is the home team. The officials must remain neutral and avoid any appearance of impropriety during the game, on and off the field. Thus, it is the right to control, not the actual control that is the deciding factor in the instant case.

In an analogous case, our Court in *Davidson* held that the actual control of the manner in which a horse was to be ridden was in the jockey; therefore, the jockey was an independent contractor not entitled to workmen's compensation from the owner of the horse. The jockey supplied his own uniform and was paid by the job. Our Court referred to the *Clark v. Industrial Commission*, 54 Ill. 2d 311, 297 N.E. 2d 154 (1973) case, in which the facts were similar to the *Davidson* case in finding an independent contractor relationship existed.

There is one case we have found outside of Pennsylvania that has addressed the very question at issue

herein, whether a high school football official is an employee or independent contractor, *O'Neil v. Blasdell High School*, 1 A.D. 2d. 854, 148 New York Supp. 2d 792 (1956). That court held that since the employer, the school district, exercised no control over the manner in which the official performed his work during the game, he furnished his own equipment and was paid a flat fee, he was an independent contractor which warranted disallowance of his workmen's compensation claim.

Two other cases outside of Pennsylvania address similar issues involving softball umpires, *Gale v. Greater Washington Softball Umpires Association*, 19 Md. App. 481, 311 A.2d 817 (1973); *Daniels v. Gates Rubber Co.*, 479 P.2d 983 (Colo. App. 1970). Although there are factual differences between those cases and the instant case, the holdings in both are applicable to the instant case since, as in both, the Respondents had no control over the umpires' conduct during the play of the softball games. In a New Jersey workmen's compensation case involving a basketball official, *Ehehalt v. Livingston Board of Education*, 147 N.J. Super. 511, 371 A.2d 752 (1977) the court reasoned, based on the right of control test, that the official was an independent contractor and not an employee of the school district. In another analogous case which was decided by the Supreme Court of Maine, *Cardello v. Mt. Hermon Ski Area, Inc.*, 372 A.2d 579 (Me. 1977) the court held that since the employer did not have the right to control the manner in which the ski patroller performed his work, he was not an employee even though the employer could bar him from the slope.

Having the benefit of well prepared briefs and well presented arguments from both counsel and having carefully reviewed the extensive record, it is clear that the District exercised no control over the manner in which Claimant performed his work as an official during the game, that the method of payment was indicative of an

independent contractor status, that no equipment was furnished to Claimant and the District had no right to discharge him. We conclude, therefore, that the findings of the referee and its conclusions of law as affirmed by the Board are supported by substantial evidence. Accordingly, we will enter the following order.

ORDER

AND NOW, this 2nd day of February, 1989, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.