**BRIGHTON SCHOOL DISTRICT,**
Petitioner,

v.

**William E. LYONS and The Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 92CA2075.

Colorado Court of Appeals,
Div. I.

Dec. 2, 1993.

Rehearing Denied Dec. 30, 1993.

Certiorari Denied May 2, 1994.

 

Lavinder, Jolliffe, Chambers & Harris, P.C., William C. Jolliffe, Denver, for petitioner.

Douglas R. Phillips, Denver, for respondent William E. Lyons.

No appearance for respondent Industrial Claim Appeals Office.

Caplan and Earnest, Alexander Halpern, Boulder, for amicus curiae The Colorado High School Activities Ass'n.

Opinion by Judge ROTHENBERG.

The sole issue in this workers' compensation case is whether the claimant, William E. Lyons, a part-time high school athletic referee, was an independent contractor or an employee of the Brighton School District (School District). The Industrial Claim Appeals Panel affirmed an order of the Administrative Law Judge (ALJ) finding claimant to be an employee and holding the School District liable for workers' compensation benefits. We set aside the order.

Lyons, a federal government employee, augmented his income by umpiring high school athletic games during his non-working hours. He belonged to the Colorado High School Activities Association (CHSAA), an association formed for the purpose of promoting athletic competitions between Colorado high schools. On October 27, 1989, he broke his leg while officiating at a football game played at Brighton High School.

In a non-published opinion, *Lyons v. Colorado High School Activities Ass'n* (Colo.App. No. 91CA0078, August 22, 1991) (not selected for official publication), a division of this court denied Lyons' claim for workers' compensation benefits from CHSAA on grounds that CHSAA was not Lyons' employer. The claimant thereupon commenced this action against the School District.

The evidence, substantially uncontroverted, is as follows:

Claimant obtained officiating jobs through a draft system conducted by CHSAA. Under the draft system, a list of certified umpires was sent to the various school districts and athletic leagues, which, in turn, held an assignment meeting to devise a tentative sea-

son schedule. The schools and athletic leagues then sent contracts, drafted by CHSAA, and captioned "Athletic Officials Contract," to the referees on an individual game basis. If the referees wished to work a particular game for which they had been scheduled, they executed and returned the contract. Although CHSAA set the rate of pay through negotiations with an association representing the umpires, and drafted the contracts, the umpires were paid by the individual schools.

Claimant was offered, and accepted, an umpiring job for the October 27th football game at Brighton High School. The CHSAA contract which he executed explicitly stated that he "accepted" the terms of the contract "as an independent contractor, not as an employee." Claimant was paid $37 in cash immediately prior to the game from Brighton High School's general fund. No deductions were taken for tax or other purposes.

In concluding that claimant was an employee of the School District rather than an independent contractor, the ALJ found that athletic activities are a continuous and integral part of Brighton High School's regular operations. He further found that athletic referees are hired by individual schools in a process "similar to a union hiring hall," and the claimant had no control over "any of the important aspects of his work" including the fee for his services, or the location and timing of his work. Finally, the ALJ concluded that there is no notice to high school referees that they are expected to carry their own accident insurance, and he concluded that the risk of liability should be borne by the school districts since it is the districts that benefit from the referees' services.

The Panel affirmed the ALJ's determination as being supported by substantial evidence.

On review, the School District and amicus curiae CHSAA contend that the Panel and ALJ incorrectly applied the law. Pointing out that claimant was hired for a limited time and purpose and that the School District had no right to control or supervise the manner in which he performed his officiating duties, they argue that claimant was an independent contractor as a matter of law. We agree.

■ When, as here, the essential facts are undisputed, the determination of employment status is a question of law and the administrative ruling is not binding on the courts. *Brush Hay & Milling Co. v. Small*, 154 Colo. 11, 388 P.2d 84 (1963).

■ There are two tests for determining whether a relationship is one of employer-employee or independent contractor, the "control" test, and the "relative nature of the work" test. *Dana's Housekeeping v. Butterfield*, 807 P.2d 1218 (Colo.App.1990). If either test is satisfied, the worker is an employee rather than an independent contractor. *Stampados v. Colorado D & S Enterprises, Inc.*, 833 P.2d 815 (Colo.App.1992); *see also* A. Larson *Workmen's Compensation* §§ 43.00–43.54 (1993).

■ Under the "control" test, the most important factor in determining employment status is whether the alleged employer exercises control over the means and methods of accomplishing the contracted service. *Frank C. Klein & Co. v. Colorado Compensation Insurance Authority*, 859 P.2d 323 (Colo. App.1993). This test also considers factors such as whether compensation is measured by time or lump sum and which party furnishes the necessary tools and equipment to perform the work. *Brush Hay & Milling Co. v. Small, supra.*

■ The relative nature of the work test, adopted in Colorado in *Brush Hay and Milling Co. v. Small, supra*, requires consideration of several additional factors. These include, first, the character of the claimant's work, *i.e.*, how skilled it is, the extent to which it is an independent trade, occupation, profession, or business, and whether the claimant and others in his position can reasonably be expected to carry their own accident burden; secondly, this test considers the relationship of the claimant's work to the alleged employer's business, *i.e.*, whether it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration of the employment is sufficient to amount to the hiring of continuous services as distinguished from contracting for the completion of a particular

job. *See Finlay v. Storage Technology Corp.*, 764 P.2d 62 (Colo.1988); *Carpet Exchange of Denver, Inc. v. Industrial Claim Appeals Office*, 859 P.2d 278 (Colo.App.1993).

■ As the parties here stipulated, claimant was specially trained and certified, and for nine years he had regularly officiated at up to 40–45 athletic games per year at Denver metro area schools. Claimant was hired to enforce the play rules established by the National Federation of High School Athletic Associations; he was called upon to exercise his independent judgment; he retained sole discretion and control over the performance of his officiating duties; and no School District employee had the ability to dismiss the claimant during a game or to direct him to change a ruling made on the field. Claimant was paid on a lump sum basis with no deductions taken for tax or other purposes; his contract with Brighton High School was for a single game and that contract expressly stated that he was an independent contractor; the claimant furnished his own uniform and equipment; and he was responsible for his own transportation to and from games.

Here, as in *Brush Hay & Milling Co. v. Small*, *supra*, we conclude that the foregoing factors compel the determination as a matter of law that claimant was an independent contractor rather than an employee. We further conclude that none of the factors cited by the ALJ and Panel compels a contrary determination.

While the claimant admittedly lacked control over the fee for his services and the location and timing of his work, these factors were also not within the control of the School District. Claimant's compensation was not determined by the School District, or by Brighton High School in particular, but rather, by CHSAA, which negotiated with an association representing claimant and other referees. Similarly, the location and timing of games was established by the school districts and athletic leagues collectively, not by Brighton High School or the School District individually.

Further, we reject the ALJ's conclusion that there was no notice to the claimant and other referees that they were expected to carry their own accident burden. In view of the fact that the "Athletic Officials Contract" drafted by CHSAA, expressly identified the referees as "independent contractors" the claimant and other referees knew, or should have known, that they were responsible for their own liability coverage.

Finally, even if we assume, *arguendo*, that athletic events are a continuous and integral part of the School District's regular operations, this factor, standing alone, is insufficient to support a finding of an employer-employee relationship, particularly in view of the undisputed evidence that claimant was not hired by the School District on a regular or continuous basis.

Accordingly, the undisputed evidence establishes that claimant was both free from control and direction and was customarily engaged in an independent trade or profession. *See Carpet Exchange of Denver, Inc., supra.*

We further note that our decision is consistent with the holdings in most of the other jurisdictions addressing this issue. *Gale v. Greater Washington Softball Umpires Ass'n,* 19 Md.App. 481, 311 A.2d 817 (1973); *Ehehalt v. Livingston Board of Education,* 147 N.J.Super. 511, 371 A.2d 752 (1977); *O'Neil v. Blasdell High School,* 1 A.D.2d 854, 148 N.Y.S.2d 792 (N.Y.App.Div.1956); *Lynch v. Workmen's Compensation Appeal Board,* 123 Pa.Cmwlth.Ct. 299, 554 A.2d 159 (1989). *But see Ford v. Bonner County School District,* 101 Idaho 320, 612 P.2d 557 (1980).

The Panel's order is set aside, and the cause is remanded with directions to deny and dismiss the claim.

PIERCE and CRISWELL, JJ., concur.