**Cary v. Gooding**

418

C.P. of Chester County, no. 92-01717.

*Christopher C. Fallon Jr.* and *Howard F. Riley,* for plaintiffs.
*C. Richard Morton,* for defendants Gooding and Monteith.
*Jane M. Shields* and *Sherilyn M. Arnold,* for West Pikeland Township.

WOOD, *J.,* September 25, 1996—This case concerns a motor vehicle accident on January 3, 1992 between the Carys and one James D. Gooding, an employee of David J. Monteith. Mr. Monteith is a heavy equipment contractor who performs excavating, site development, road construction and maintenance for different entities, including West Pikeland Township. The Carys allege that Mr. Gooding, while working for Mr. Monteith, backed one of Monteith's trucks into their automobile, causing them personal injuries and property damage.

The facts indicate that immediately before the accident, Gooding, on behalf of Monteith, was performing work requested by West Pikeland Township. Because they were doing work for West Pikeland Township, Gooding and Monteith contend that they are municipal employees who are entitled to sovereign immunity, and indemnification from and legal representation at the expense of West Pikeland Township. West Pikeland's response is that Monteith and Gooding were merely independent contractors for whose negligence the township is not responsible under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8501 et seq. Defendants

joined West Pikeland Township as a third party defendant in December of 1992.

On November 20, 1995, this court issued an administrative conference order precluding further pretrial motions without leave of court. On May 3, 1996, West Pikeland Township moved for leave to file a motion for summary judgment. This court granted West Pikeland leave to file its motion and entered summary judgment in the township's favor on August 26, 1996. This case is before me now on defendants' motion for reconsideration.

The sole question at issue is whether it was error for this court to dismiss defendants' claim against West Pikeland by way of summary judgment on the ground that defendants do not meet the statutory definition of "employee" under 42 Pa.C.S. §8501.

Ordinarily, it is for the jury to determine whether a master-servant relationship exists; however, "where the facts giving rise to the relationship are not in dispute, the question of the relationship between the parties is properly determined by the court." *Breslin by Breslin v. Ridarelli,* 308 Pa. Super. 179, 454 A.2d 80 (1982). See also, *Woolfolk v. Duncan,* 872 F. Supp. 1381 (E.D. Pa. 1995); *Mature v. Angelo,* 373 Pa. 593, 97 A.2d 59 (1953); *Melmed v. Motts,* 341 Pa. Super. 427, 491 A.2d 892 (1985). In the case at bar, West Pikeland Township did not dispute any of defendants' factual allegations; the township only challenged the legal conclusions to be drawn from those facts. Therefore, the issue of defendants' employment status was properly determined by this court.

Summary judgment is appropriate where the pleadings depositions, answers to interrogatories, admissions on file, affidavits, and any expert reports, viewed in the light most favorable to the non-moving party, reveal

no genuine issues of material fact and entitle the moving party to judgment as a matter of law. Pa.R.C.P. 1035.1 et seq. (1996); *Smith v. Porter Township, Clinton County,* 141 Pa. Commw. 244, 595 A.2d 693 (1991); *Schuylkill County v. Maurer,* 113 Pa. Commw. 54, 536 A.2d 479 (1988). Under Pa.R.C.P. 1035.1, the permissible record at bar consists of plaintiffs' complaint, defendants' answer, defendants' complaint against additional defendant, additional defendant's answer, David Monteith's affidavit (incorporating certain business records), Monteith's and Gooding's depositions, and plaintiffs' admissions. Although West Pikeland Township submitted other documentary evidence in support of its motion, it cannot be part of the permissible record on motion for summary judgment because it was not attached to the pleadings or incorporated by reference in any affidavit.

The record reveals that Monteith is in the business of "excavating, site development, road construction and maintenance." He owns the trucks his employees drive. He owns the tools his employees use, although he has indicated some of his employees use their own tools. He submits invoices to the township and other entities for the work he does. The invoices show that he bills by the job, charging an hourly rate for labor and equipment. He also charges for the cost of the materials he purchases. Monteith delegates work to his employees at his discretion, although he will accommodate specific requests for particular employees as those employees become available. Monteith has a contract with West Pikeland Township which regulates the amount of time he has in which to respond to proferred assignments. According to Monteith's affidavit, he has two hours in which to respond to "requests for snow removal"

and three days in which to respond to "all other requests for services." Monteith estimates that performing services for the township comprises nearly 100 percent of his business in the winter, and approximately 25 percent-30 percent of his business during the summer months.

Monteith indicated that on past occasions when he has performed services for the township, the township roadmaster would "drive by" the site to "supervise." Sometimes, Monteith stated, the roadmaster would stop by the site and make "suggestions" as to how the work should be performed. He avers that the township roadmaster would frequently "specify" the tools and equipment to be used to do a certain job, or the employees he desired to have perform the work. For example, Monteith illustrated, the roadmaster might call and say, "I have a job for Jim and Dan as soon as they're available." Monteith did not aver that the township had the authority to pull his employees from their assigned tasks to perform work for the township. Monteith acknowledged that neither he nor his employees are on the township's payroll nor does the township pay workmen's compensation benefits for his employees.

On the morning of the accident, Monteith and Gooding were at Monteith's workshop affixing pre-manufactured wildlife refuge signs to plywood bolted on 2 x 2 posts. The township had supplied the plywood. After lunch, Gooding and his brother, who also worked for Monteith, drove Monteith's truck, upon which was emblazoned Monteith's name, to mapped out destinations and proceeded to post the signs in accordance with the township's instructions, which the township had communicated to Monteith. Monteith avers that he had been told specifically what signs to erect, where to get the signs, on which properties they should be

posted and where on the property they were to be posted. At some point Monteith's vehicle collided with the Carys' automobile. Monteith's employees notified Monteith of the accident. Monteith then called the township roadmaster, who came to the scene to investigate.

Section 8501 of the Political Subdivision Tort Claims Act defines "employee" as:

"Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including any volunteer fireman and any elected or appointed officer, member of a governing body or other person designated to act for the government unit. Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit." 42 Pa.C.S. §8501.

According to the Pennsylvania Commonwealth Court, a court must examine the factors articulated in *Hammermill Paper Co. v. Rust Engineering Co.,* 430 Pa. 365, 243 A.2d 389 (1968) to determine whether an entity qualifies as an "employee" under section 8501 of the Political Subdivision Tort Claims Act. *Smith v. Porter Township, Clinton County, supra* at 249-50, 595 A.2d at 696; *Schuylkill County v. Maurer, supra* at 61, 536 A.2d at 482-83. The *Hammermill* factors are:

"(1) control of manner work is to be done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) the nature of the work or occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplied the tools; (8) whether payment is by the time or by the job; (9) whether work is part

of the regular business of the employer; (10) the right to terminate the employment at any time." See *id.* at 370, 243 A.2d at 392.

"None of these factors standing alone, however, is dispositive of one's status, and each case must be determined according to its own facts." *Schuylkill County v. Maurer, supra* at 61, 536 A.2d at 483; *Smith v. Porter Township, Clinton County, supra* at 250, 595 A.2d at 696. These factors are the same ones used to guide characterization of an employment relationship for purposes other than governmental immunity. See *Surowski v. Public School Employes' Retirement System,* 78 Pa. Commw. 490, 467 A.2d 1373 (1983); *Stepp v. Renn,* 184 Pa. Super. 634, 135 A.2d 794 (1957). Moreover, the Commonwealth Court has stated that entitlement to sovereign immunity as an employee of a government unit depends upon the existence of a respondeat superior relationship as defined by well-established principles of agency. *Walls v. Hazleton State General Hospital,* 157 Pa. Commw. 170, 629 A.2d 232 (1993), *allocatur denied,* 536 Pa. 649, 639 A.2d 35 (1994). Accordingly, Pennsylvania courts have frequently turned to the Restatement (Second) of Agency for guidance. See *Aliota v. Graham,* 984 F.2d 1350 (3d Cir. 1993), *cert. denied,* 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993); *Woolfolk v. Duncan,* 872 F. Supp. 1381 (E.D. Pa. 1995); *Marshall v. Port Authority of Allegheny County,* 524 Pa. 1, 568 A.2d 931 (1990); *Philadelphia Electric Co. v. James Julian Inc.,* 425 Pa. 217, 228 A.2d 669 (1967); *Johnson v. Angretti,* 364 Pa. 602, 73 A.2d 666 (1950).

Of all the factors to be considered when construing the status of an employment relation, courts have referred to the first, right of control, as the hallmark of a master-servant relationship. See *Jones v. Century Oil U.S.A. Inc.,* 957 F.2d 84 (3d Cir. 1992); *Mahon*

*v. City of Bethlehem,* 898 F. Supp. 310 (E.D. Pa. 1995), *reconsideration denied,* 902 F. Supp. 76 (E.D. Pa. 1995); *Woolfolk v. Duncan,* 872 F. Supp. 1381 (E.D. Pa. 1995); *Moon Area School District v. Garzony,* 522 Pa. 178, 560 A.2d 1361 (1989); *Myszkowski v. Penn Stroud Hotel Inc.,* 430 Pa. Super. 315, 634 A.2d 622 (1993); *Lynch v. W.C.A.B. (Connellsville Area School District),* 123 Pa. Commw. 299, 554 A.2d 159 (1989), *allocatur denied,* 525 Pa. 629, 578 A.2d 416 (1990). According to the Restatement (Second) of Agency, "[t]he word 'servant' does not exclusively connote a person rendering manual labor, but one who performs continuous service for another and who, as to his physical movements, is subject to the control or to the right to control of the other as to the manner of performing the service." Restatement (Second) of Agency §220, cmt. a.

Applying the requisite factors to the case at bar, defendants' status as an independent contractor is clear. Defendant alone determines which work he will accept or refuse; he alone controls which of his employees will perform which services, although he endeavors to accommodate requests for specific employees; he supplies the tools his employees use as well as their transportation; he bills for services by the job; he is not on the township's payroll nor are his employees entitled to workmen's compensation at the expense of the township. Regarding the township roadmaster's periodic drive-by "supervision," it is well-established that supervision and inspection of a contractor's work does not destroy his independence as long as it does not interfere with the contractor's control over the means and methods by which the work is performed. *O'Donnell v. South Fayette Twp. School District,* 105 Pa. Super. 488, 161 A. 887 (1932). See also, *Townsend v. Pitts-*

*burgh,* 383 Pa. 453, 119 A.2d 227 (1956); *Hargrove v. Frommeyer & Co.,* 229 Pa. Super. 298, 323 A.2d 300 (1974); *Celender v. Allegheny County Sanitary Authority,* 208 Pa. Super. 390, 222 A.2d 461 (1966), *allocatur denied.* Even offering "guidance and direction" to a contractor's employees will not abrogate the independent nature of the parties' relationship, as long as the contractor retains the right to perform the work according to his own initiative. See *Boettger v. Babcock & Wilcox Co.,* 242 F.2d 455 (3d Cir. 1957); *Brooks v. Buckley & Banks,* 291 Pa. 1, 139 A. 379 (1927); *Simonton v. Morton,* 275 Pa. 562, 119 A. 732 (1923); *Miller v. Merritt & Co.,* 211 Pa. 127, 60 A. 508 (1905). According to the Pennsylvania Supreme Court, a master-servant relationship is not shown if the contractor "hires, discharges, and pays the men, determines or controls their hours of work, the foreman they work under, and retains ultimate control of the workman's manner of doing each particular step in the work . . . though control of the place (streets to be worked on), the kind, class, or character of the work, the result to be obtained, . . . and the method of doing the work (by shovel and truck), was reserved to the city." *Brooks v. Buckley & Banks, supra* at 11, 139 A. at 383 (construing master-servant relationship under the Workmen's Compensation Act).

Concerning the township's instructions regarding the signs' appearance and designation of the parcels upon which the signs were to be posted, it is well-established that a contractee has the right to control the result of the work for which a contract is let. See *Jones v. Century Oil U.S.A. Inc., supra; Mahon v. City of Bethlehem, supra; Moon Area School District v. Garzony, supra.*

Lastly, despite defendant Monteith's protestations regarding his belief that a master-servant relationship existed between himself and West Pikeland Township, it is the reality of the relationship and applicable rules of law, not a party's beliefs, which determines whether one is an employee or an independent contractor. See *Godwin v. Visiting Nurse Ass'n Home Health Servs.*, 831 F. Supp. 449 (E.D. Pa. 1993), *aff'd*, 39 F.3d 1173 (1994), *appeal dismissed*, 39 F.3d 1173 (1994); *Jones v. Century Oil U.S.A. Inc., supra; Feller v. New Amsterdam Casualty Co.*, 363 Pa. 483, 489, 70 A.2d 299, 302 (1950). For these reasons, I conclude defendants are not "employees" of West Pikeland Township within the meaning of 42 Pa.C.S. §8501.

Defendants argue that recent case law has extended immunity to persons who are "designated to act on behalf of the government unit" without regard to whether or not such persons qualify as independent contractors. See *Murray v. Zarger*, 164 Pa. Commw. 157, 642 A.2d 575 (1994); *Walls v. Hazleton State General Hospital, supra; Wilson v. Miladin*, 123 Pa. Commw. 405, 553 A.2d 535 (1989). The issue is not whether Monteith is an independent contractor, defendants contend, but whether, at the time and place of the accident, Monteith and Gooding "come within the definition of 'employee' as set forth in the statute." However, the statutory definition expressly exempts from eligibility independent contractors and persons performing tasks over which the government has no legal right of control. 42 Pa.C.S. §8501. Thus, eligibility under the Political Subdivision Tort Claims Act necessarily turns on the government unit's right of control over the alleged employee. See *Walls v. Hazleton State General Hospital, supra* (eli-

gibility for sovereign immunity depends upon the existence of respondeat superior). None of the aforementioned cases hold otherwise.

For example, in *Wilson v. Miladin, supra,* the Commonwealth Court held that a varsity football player was an employee of the school district for purposes of governmental immunity. The court observed that the school district, by furnishing the players' uniforms, held out the football team as its representative. *Id.* Players were required to comply with the coach's instructions as well as with the school's and school district's rules governing athletic competitions. *Id.* The school controlled admission to, and, presumably, expulsion from the team. It probably regulated the hours, days, times, and duration of the games, as well as controlled the premises upon which the games were played and the players' conduct during the games. For these reasons, it is hardly anomalous to conclude that a school district exercises over its students in a school-sponsored extra-curricular activity a sufficient degree of control so as to render the relationship one of master and servant, rather than contractor and contractee. In contrast, West Pikeland Township did not hold Monteith and Gooding out as its employees. Gooding drove a truck on which was displayed Monteith's logo, not West Pikeland's. West Pikeland did not control the days, hours, times, or duration which Monteith and his employees worked, nor did West Pikeland have any control over Monteith's discretion to employ or discharge whomever he wished. Unlike the *Wilson* case, West Pikeland simply did not exercise a sufficient degree of control over Monteith to render the parties' relationship one of master and servant.

The next case, *Walls v. Hazleton State General Hospital, supra,* is likewise easily distinguished. This case

discussed whether an emergency room physician, employed by a corporation which contracted to provide orthopedic services to the hospital, could be considered one of the hospital's employees. See *id.* The court stated,

"We agree that Dr. Polidora probably was an independent contractor. However, we find that there was sufficient evidence of record for the jury to have concluded that Dr. Polidora was an ostensible agent of the hospital, and as such, would fall under section 8522(b)(2), the medical-professional exception to sovereign immunity." *Walls, supra* at 178, 629 A.2d at 236.

Notwithstanding this, the court acknowledged that the physician's employment status was immaterial because he was no longer a party to the litigation. *Id.*

Defendants at bar have not raised the issue of ostensible agency, and it is questionable whether such a theory would apply to a municipal corporation. Nevertheless, unlike the facts in *Walls,* the facts at bar do not permit the conclusion that either Monteith or Gooding were West Pikeland's agents, either actually or apparently. Unlike *Walls* and *Wilson,* there is no evidence that West Pikeland Township held out Monteith and Gooding as its employees. To the contrary, the record demonstrates that Monteith and Gooding were at all times independent of West Pikeland Township.

Lastly, defendants cite the case, *Murray v. Zarger, supra,* in support of the theory that sovereign immunity extends to anyone who is "designated to act on behalf of a government unit" without regard to the right of control. Again, I am not persuaded. The underlying litigation in *Murray* involved a suit against a school district, its swim coach, and a volunteer assistant swim coach by the estate of a student fatally injured in a motor vehicle accident which occurred while the vol-

unteer assistant coach was driving the student to a diving competition. *Id.* The school district was an original party to the proceeding and had voluntarily assumed the defense of its swim coach, Jack McIntyre, but refused to defend Richard Zarger, the volunteer assistant swim coach and driver. *Id.* The facts revealed that the school district had expressly authorized McIntyre to hire an assistant. *Id.* McIntyre hired Zarger for a one-time fee of $200. *Id.*

The issue in *Murray* concerned the relationship between the tort-feasor, the assistant volunteer swim coach who operated the implicated vehicle, and the government unit, a school district. In contrast, the issue at bar is not the tort-feasor's relationship with the government unit, as it was in *Murray,* but the relationship between the government unit and the tort-feasor's employer. Thus, the question at bar is whether Monteith occupies a position relative to the township similar to the position McIntyre occupied relative to the school district in *Murray.* A comparison of the two reveals significant differences. Presumably the school district controlled the hours and days McIntyre worked, as well as his conduct during those periods. He was probably on the school district's payroll. He did not have independent authority to hire and discharge personnel. His work was performed on school district premises. In the case at bar, the township does not control the hours and days Monteith or his employees work; nor does the township control Monteith's or his employees' conduct during each workday. Neither Monteith nor his employees are on the township's payroll. Monteith has his own workshop. Lastly, Monteith has unfettered discretion in personnel matters. He determines who will

be hired or discharged. He delegates work according to his own discretion and no one has the authority to supersede his assignments. Clearly he does not hold the same status with respect to the township that McIntyre held in relation to the school district. Furthermore, given that there was no dispute about McIntyre's status as a school district employee, under established agency principles the school district necessarily would have been liable for defending Zarger as McIntyre's agent. See Restatement (Second) of Agency §255. After all, the school district had expressly authorized McIntyre to hire an assistant. *Murray v. Zarger, supra.* In the case at bar, the township is not legally responsible for Monteith's defense; consequently, Monteith's agents have no recourse against the township. Lastly, the Commonwealth Court in *Murray* stated, "[I]f the school district based its argument that Zarger was not entitled to indemnity on the ground that he was an independent contractor, then the *Hammermill* factors would apply." *Murray v. Zarger, supra* at 161, 642 A.2d at 577. Thus, even under *Murray*, the *Hammermill* factors are applicable to the case at bar.

Defendants have presented no cases abrogating the need to analyze a government unit's right of control. In all of the above cases, although it may not have been elaborately discussed, there were numerous indicia of control which are not found in the facts at bar. It is well-established that provisions of the Political Subdivision Tort Claims Act are to be construed strictly, as the government has only intended to subject itself to litigation in very limited circumstances. *Thomas v. City of Philadelphia,* 668 A.2d 292 (Pa. Commw. 1995);

432

*First National Bank of Pennsylvania v. PennDOT,* 148 Pa. Commw. 158, 609 A.2d 911 (1992), *appeal denied,* 532 Pa. 648, 614 A.2d 1144 (1992). If this court were to accept defendants' theory, the Commonwealth and its political subdivisions would be subjected to litigation beyond the scope expressly contemplated. The legislature has determined that independent contractors are not eligible for sovereign immunity, 42 Pa.C.S. §8501; it is not for this court to disregard express statutory language. West Pikeland did not have the right to exercise such control over Monteith as to render him West Pikeland's "employee" within the meaning of 42 Pa. C.S. §8501; consequently, neither Monteith nor his employee, James Gooding, are entitled to immunity or representation at the township's expense. See *Thomas v. City of Philadelphia,* 668 A.2d at 295 n.6, 296 n.10; *Smith v. Porter Township, Clinton County, supra.*

ORDER

And now, September 25, 1996, consistent with the foregoing opinion, it is hereby ordered and decreed that defendants' motion for reconsideration is denied.